[No. C012758. Third Dist. May 28, 1992.]

SURINDER SINGH HANSRA et al., Petitioners, v.
THE SUPERIOR COURT OF YUBA COUNTY, Respondent;
JESUS MAGANA et al., Real Parties in Interest.

## COUNSEL

Caulfield, Davies & Donahue and Douglas L. Smith for Petitioners.

No appearance for Respondent.

John T. Larimer, Jr., for Real Parties in Interest.

## OPINION

PUGLIA, P. J.—Petitioners Surinder Singh Hansra and Balbir Kaur Hansra seek a writ of mandate to compel the superior court to grant their motion for summary judgment. (Code Civ. Proc., § 437(c), subd. (*l*).) Petitioners, the mother and brother of Joginder Hansra, are defendants in the underlying wrongful death action. Joginder Hansra was married to Juanita Hansra. Real

parties in interest, plaintiffs in the wrongful death action, are the children of Juanita Hansra and the Estate of Juanita Hansra.[1]

Joginder Hansra shot and killed his wife, Juanita Hansra, and then killed himself. Real parties in interest (hereafter plaintiffs) filed a wrongful death action (Code Civ. Proc., § 377) alleging that petitioners (hereafter defendants) knew of Joginder's dangerous propensities and failed to warn Juanita, or alternatively, that petitioners negligently incited Joginder to violence.

The trial court denied defendants' summary judgment motion because they failed to controvert allegations that they had criticized, belittled and demeaned Juanita with the intent of causing marital discord, and as such there was a material factual dispute whether a special relationship existed between defendants and Juanita which would give rise to a duty to warn.

We notified the parties that we were considering issuance of a peremptory writ of mandate in the first instance (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893]) and that we were disposed to consider the order denying the motion for summary judgment as an order denying a motion for judgment on the pleadings. So considered, we shall conclude that the complaint does not state a cause of action. Since a motion for summary judgment necessarily tests the sufficiency of the complaint, and the complaint here was deficient, defendants were not required to negate its allegations or to establish a defense as a matter of law in order to prevail. Consequently, the motion should have been granted.

If the order is permitted to stand, defendants will be forced to undergo trial on nonactionable claims. Such circumstances call for issuance of a peremptory writ of mandate directing the trial court to vacate its order and to enter an order granting the motion.

The remaining issue is whether plaintiffs should be granted leave to amend to plead a cognizable claim. They argue that the evidence submitted in opposition to defendants' motion would support allegations which would cure the complaint's present deficiencies. Our review of this evidence leads us to the contrary conclusion. Therefore we shall issue a peremptory writ of mandate directing the trial court to vacate its present order and to enter an order treating defendants' motion as one for judgment on the pleadings and granting the same without leave to amend.

---

[1]The real parties in interest are Jesus Magana, Gian Daman, Bindi Daman, minors, by and through their guardian ad litem, Emerita Evans, the Estate of Juanita Rosalva (Banuelos) Hansra, by and through special administrator Emerita Evans, and Josephine Magana, a minor, who is an unwilling plaintiff made a defendant pursuant to Code of Civil Procedure section 382.

Plaintiffs sued the Yuba-Sutter Mental Health Services and the counties of Yuba and Sutter. The original complaint alleged that Joginder had received treatment and counseling from the Yuba-Sutter Mental Health Services for a 16-month period; during treatment Joginder had made threats of serious physical violence against a number of individuals; Juanita was a reasonably identifiable victim of these threats; the governmental entities named as parties failed to warn Juanita of such threats; and as a result of the failure to warn Juanita continued living with Joginder, resulting in her death. (See *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)

In their first amended complaint, plaintiffs substituted defendants Surinder and Balbir Hansra for fictitious defendants. Defendants' demurrer was sustained on the ground that plaintiffs had not pleaded facts sufficient to show the existence of a special relationship giving rise to a duty to warn. Leave to amend was granted on plaintiffs' representations that they would be able to plead such facts in addition to other facts showing that defendants had incited Joginder to action.

Plaintiffs attempted to supply the missing factual allegations in their second amended complaint, which we shall hereafter refer to as "the complaint." Plaintiffs alleged that Joginder had previously been married to an East Indian woman in a marriage arranged by defendants and other members of Joginder's family; Joginder's relationship with Juanita led to his divorce from his East Indian wife in January 1987 and marriage to Juanita in May 1987; defendants disapproved of Juanita because she was Mexican and had four children by previous unions and defendants had not arranged the marriage; fearing that Juanita would lay claim to an interest in the family orchard operations in which Joginder was a partner, defendants directed Joginder to divest himself of title to his interest in the real property; Joginder complied with these directives immediately before his marriage to Juanita; defendants expressed disapproval of Juanita because she was not receiving child support for all of her children; defendants pressured Joginder to take steps to obtain the support payments, including writing a letter to the father of one child stating that visitation would be withheld until support payments were received; defendants, using their native tongue, Punjabi, spoke derogatorily of Juanita in her presence; defendants were motivated by their dislike of Juanita, her race, her children, her lack of independent financial means, and her unwillingness to work in their family orchards; and by these actions defendants intended to provoke marital disharmony and cause a termination of the marital relationship.

The complaint further averred that defendants were aware that: Joginder was mentally and emotionally unstable and had had past outbursts of violent,

uncontrollable rage; Joginder was receiving mental health treatment; Joginder had been disciplined at his place of employment based on his threats of physical violence against fellow employees, resulting in issuance of one or more *Tarasoff* letters by the employer and the reassignment of Joginder to another office; law enforcement officers had been required to remove weapons from Joginder's custody or control on previous occasions of threatened violence; and Joginder was frustrated by the visits between one of Juanita's children and his father while the father was not paying child support.

The complaint further alleged that prior to April 12, 1989, Juanita decided to terminate her marriage to Joginder and informed him of this fact; Joginder reacted with characteristic anxiety, depression and hostility toward Juanita, and Joginder communicated these feelings to defendants; defendants were aware that Joginder had access to one or more weapons; and Joginder had expressed a desire to prevent Juanita's departure by any means at his disposal. Notwithstanding this knowledge, as well as Juanita's particular vulnerability, defendants failed to warn her so that she might take steps to remove herself from the family dwelling. As a proximate result of defendants' breach, Joginder beat Juanita and then shot her to death.

After unsuccessfully demurring to the second amended complaint, defendants moved for summary judgment based on six allegedly undisputed facts: (1) Surinder was the natural brother of Joginder; (2) Balbir was the natural mother of Joginder; (3) on April 12, 1989, Joginder shot and killed Juanita then shot and killed himself; (4) defendants had no knowledge of Joginder's crime until after it was committed; (5) defendants were not present at the time of the shootings; and (6) defendants did not supply Joginder with the weapons he used to commit the murder/suicide. Defendants argued that they had no duty to control Joginder or warn Juanita of an impending attack and that they did not act in concert with Joginder and thus were not liable as joint tortfeasors or under a conspiracy theory. Defendants also argued that the allegations of the complaint failed to state a cause of action.

Plaintiffs opposed the motion on the grounds that their allegations were sufficient to state a viable claim and that defendants' undisputed facts did not negate the allegations of the complaint. Consequently, plaintiffs relied in part on the allegations of the complaint to oppose the motion since defendants had not attempted to negate those allegations.

Plaintiffs also submitted evidence in opposition, consisting of a treatment summary from the Sutter-Yuba Mental Health Services, several pages from the police report summarizing the investigation of the deaths, and a declaration from one of Juanita's children. The treatment summary detailed

Joginder's psychological problems. The police report summarized the circumstances of the shootings, and stated that police had found a signed joint petition for summary dissolution of marriage in one of the bedrooms. In the declaration, Jesus Magana declared that he had lived with his mother, his brother, and Joginder in a mobilehome at defendants' orchards. Jesus declared that Joginder's brother, defendant Surinder, would enter the mobilehome at any time without notice. Jesus recounted how Joginder's mother, defendant Balbir, would enter the mobilehome and speak with Joginder in Punjabi, and that soon thereafter Joginder would inform Juanita, his brother and himself that they could either work in the orchards or move out of the mobilehome. Jesus declared that for a time they worked in the orchards but were never paid. Jesus eventually moved out because he refused to work.

The trial court denied the motion by written order which states in part: "The Court . . . finds that the Defendants' Statement of Undisputed Facts fails to controvert [the] charging allegations of the Complaint. Specifically, defendants made no attempt whatsoever to controvert the allegations in the Complaint that they criticized, belittled and demeaned the relationship between Juanita and Joginder Hansra for over two years with the intention of causing marital discord between Joginder Hansra, their brother and son, and Juanita Hansra, their son's wife, which the Court feels has a bearing on whether or not a special relationship existed between the defendants and their daughter-in-law, such that the defendants would have a duty to warn. The argument by the defendants that the plaintiffs have produced no evidence of such occurrences is unpersuasive because they have the burden of establishing that they are entitled to judgment on the basis of undisputed facts."

This petition for writ of mandate followed.

I

As in all cases requesting extraordinary relief, we must consider whether the remedy at law is inadequate before reaching the merits of the petition. (Code Civ. Proc., § 1086.) Defendants' legal remedy, should they not succeed at trial, would be by appeal from the judgment. Defendants argue that this remedy would be inadequate since they would be forced to participate in needless discovery and undergo a lengthy trial even though the complaint does not state a legally cognizable claim. Plaintiffs do not dispute that discovery and trial are the natural consequences of the court's order, nor do they question the propriety of extraordinary relief if the court's order is found to be erroneous. Instead, plaintiffs propose that the court's ruling was correct.

■ Although as a general rule an appeal is presumed to be an adequate remedy (*Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 370 [217 P.2d 951]), extraordinary relief is warranted in order to prevent a needless trial. (Cf. *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 148 [145 Cal.Rptr. 534, 577 P.2d 669]; *Gorbacheff* v. *Justice's Court* (1947) 31 Cal.2d 178, 180-181 [187 P.2d 407].) In the present case, the court's order will result in an unnecessary trial. In these circumstances, consideration of the merits of the petition is appropriate.

## II

■ Review of a summary judgment motion by an appellate court involves application of the same three-step process required of the trial court. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.] [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of triable, material factual issue. [Citation.]" (*AARTS Productions, Inc., supra*, 179 Cal.App.3d at pp. 1064-1065.)

In the present case, defendants made only a minimal effort to negate the many factual allegations of the complaint. Instead, they focused primarily on the legal conclusions to which those allegations gave rise. Plaintiffs responded by arguing that the motion in such form was nothing more than a disguised demurrer, and that it should be denied just as the previous demurrer had been overruled. The court did not address this argument squarely, but instead denied the motion on the ground that defendants had failed to negate the plaintiffs' claims.

In so ruling, the court implicitly determined that the complaint alleged at least one cognizable claim, and that it was therefore appropriate to proceed to the second step of the three-step process, namely, "whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.]" (*AARTS Productions, Inc., supra*, 179 Cal.App.3d at pp. 1064-1065.)

■ Where a complaint does not state a cognizable claim, it is not necessary to proceed to the second step, since a defendant has no obligation

to present evidence to negate a legally inadequate claim. "[A] *defendant's* motion for summary judgment 'necessarily includes a test of the sufficiency of the complaint . . . .' Motions for summary judgment in such suitations have otherwise been allowed as being in legal effect motions for judgment on the pleadings. [Citations.]" (*LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744 [176 Cal.Rptr. 224], original italics, quoting *C.L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483].) " 'Thus, if the reviewing court finds the complaint fails to state facts sufficient to constitute a cause of action as a matter of law, it need not reach the question whether plaintiff's opposition to the summary judgment motion raises a triable issue of fact.' " (*Robinson* v. *Hewlett-Packard Corp.* (1986) 183 Cal.App.3d 1108, 1131 [228 Cal.Rptr. 591], quoting *Rowe* v. *Wells Fargo Realty Services, Inc.* (1985) 166 Cal.App.3d 310, 316 [212 Cal.Rptr. 374].)

The issue framed in the trial court as well as this court is whether plaintiffs' allegations were sufficient to state cognizable claims. Before we need consider defendants' showing *negating* plaintiffs' claims, we must consider the *legal adequacy* of those claims. This we now proceed to do.

### III

Plaintiffs propose that their complaint may proceed on two separate theories of negligence. ■ First, plaintiffs argue that defendants may be held liable under general negligence principles because their conduct created an unreasonable risk of harm to Juanita. ■ Second, plaintiffs contend that the allegations established two sets of special relationships giving rise to defendants' duty to warn Juanita of a possibly violent outburst by Joginder. We examine each of these theories in turn.

■ "[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." (*Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 292 [253 Cal.Rptr. 97, 763 P.2d 948].) The existence of a duty is a question of law to be decided by the court. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 124 [211 Cal.Rptr. 356, 695 P.2d 653, A.L.R.4th 1747].)

In determining the existence of a duty of care in a given case, a number of factors must be considered, including, "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury

suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; accord *Nally* v. *Grace Community Church, supra*, 47 Cal.3d 278, 293.)

■■■ Plaintiffs propose that the question of duty in the present case is governed not only by the principles just set forth, but also by section 302B of the Restatement Second of Torts (1965), which states: "An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or the third person which is intended to cause harm, even though such conduct is criminal."

Section 302B of the Restatement Second of Torts, *supra*, in addition to the usual duty factors set forth above, formed the basis of the decision in *Pamela L.* v. *Farmer* (1980) 112 Cal.App.3d 206 [169 Cal.Rptr. 282], the case upon which plaintiffs principally rely. In *Pamela L.*, three young girls sued a husband and wife after the husband sexually molested the girls at the couple's home. The complaint alleged that the wife, knowing her husband had a record as a sexual offender and had molested women and children in the past, nonetheless encouraged and invited the girls to use their swimming pool when only the husband would be home. The wife also encouraged the girls' parents to allow their children to play at the pool and represented that they would be perfectly safe with her husband.

After the trial court sustained the wife's demurrer without leave to amend, the children appealed. The Court of Appeal reversed because the complaint stated a cause of action for negligence. The court wrote: "Analyzing [the wife's] liability in light of relevant policy considerations rather than arbitrary classifications of 'invitee' or 'licensee,' [fn.] we conclude [the wife] can be held liable in this case. Assuming the allegations of [the husband's] past conduct and [the wife's] knowledge thereof were adequately proved, the most important factor, foreseeability of harm, is great. The harm occurred at [the wife's] home, committed by a person having a close relation to [the wife]. According to the allegations, plaintiffs were expressly invited by [the wife]. The burden on [the wife] to avoid the harm was slight; she could have suggested simply that she did not want plaintiffs to come over to swim while [she] was not home. Although [the husband's] primary responsibility for the harm is obvious, nevertheless there is a fairly close connection between [the wife's] invitation and the ultimate harm. There is moral

culpability for [the wife's] conduct which increased the risk of harm. The victims were children entitled to more stringent precautions than necessary for an adult." (*Pamela L.* v. *Farmer, supra,* 112 Cal.App.3d 206, 211-212.)

Plaintiffs argue that *Pamela L.* is important because it draws the distinction between misfeasance, for which liability may be imposed, and mere nonfeasance, which ordinarily is nonactionable in the absence of a special relationship giving rise to a duty to control or a duty to warn. (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, 435.) According to plaintiffs, defendants herein, like the wife in *Pamela L.,* were guilty of misfeasance because "[t]hey were actively involved in creating, maintaining, and directing the animosity which foreseeably resulted in injury to an objectively identifiable victim."

Defendants disagree with plaintiffs' characterization of their claim, and propose that the facts of this case are more akin to those in *Wise* v. *Superior Court* (1990) 222 Cal.App.3d 1008 [272 Cal.Rptr. 222], a more recent decision by the same court that decided *Pamela L.* In *Wise,* individual motorists injured in a sniper attack brought an action against the wife of the sniper, alleging that she could have prevented the attack. The complaint alleged that the husband was a human time bomb with a history of erratic and violent behavior including felony arrests and drug and alcohol abuse. The husband had a long history of psychiatric treatment for depression, aggressive behavior, and criminal conduct. He also maintained an arsenal of firearms and a collection of wild and dangerous animals at the marital residence. Shortly before the attack, he threatened to kill a neighborhood cat which had killed one of his rabbits. At least one week prior to the attack, the wife left the marital residence due to the husband's increasingly unstable behavior. The plaintiffs alleged that the wife was negligent in that she had permitted her husband to occupy the residence alone with knowledge of his past erratic behavior and his access to weapons without protecting or warning others within the zone of danger thus created. The plaintiffs claimed the attack might have been prevented had the wife removed the weapons from the residence, monitored her husband's actions, notified local authorities of his behavior, initiated a psychiatric hold or evaluation, or evicted him from the residence. The plaintiffs alleged that as a proximate result of the wife's breach of duty, her husband climbed to the roof of the residence and mounted a sniper attack against a number of passing motorists, including plaintiffs, before taking his own life.

After the wife's demurrer was overruled, she petitioned the Court of Appeal, which issued a peremptory writ of mandate directing the trial court

to sustain the demurrer without leave to amend. In rejecting the plaintiffs' argument that the wife, through her own actions, had made the plaintiffs' position worse and created a foreseeable risk of harm from a third person, the court held that the victims (passing motorists) and the harm (a sniper attack) were unforeseeable. The court also "easily" distinguished *Pamela L.*, "since both the victims (young children) and the harm (sexual assault) were foreseeable." (*Wise* v. *Superior Court, supra,* 222 Cal.App.3d at p. 1014.)

The facts of this case are distinguishable from those in *Pamela L.* v. *Farmer, supra,* and the factors which led the *Pamela L.* court to impose general negligence liability are missing here. Joginder, like the husband in *Wise,* had a history of treatment for psychiatric problems and aggressive behavior. Both had access to weapons and generally threatened violent conduct. There were allegations in *Wise* and the present case that the defendants knew of these facts. In both this case and *Wise, supra,* the victims were not members of the class to whom the threats had been directed, whereas in *Pamela L.* the victims were readily identifiable. Similarly, in both *Wise* and the present case, the plaintiffs sought to predicate liability on the defendants' failure to take preventive measures to forestall what were essentially unforeseeable events. In *Pamela L.,* by contrast, liability was based on defendant's active enticement of foreseeable victims into the zone of danger she had helped to create. (*Supra,* 112 Cal.App.3d 206.)

It is true that the complaint alleges that Joginder informed defendants that he intended to prevent Juanita's departure at any cost. This allegation, though, does not raise an inference that Joginder's murder of Juanita was foreseeable. If anything, Joginder's statement implied that he would take action against those who were attempting to assist Juanita's departure, namely, defendants, rather than against Juanita herself. The allegations also fail to suggest that Joginder's hostility was ever directed at Juanita, who was the object of his desires. In the circumstances alleged, it was unforeseeable that Joginder would murder Juanita.

Plaintiffs, while acknowledging that murder was unforeseeable, insist that defendants could foresee that Joginder might physically assault Juanita, and that her death, being a foreseeable consequence of such an outburst, would therefore be foreseeable. Plaintiffs' conclusion does not follow from the facts alleged. In the absence of allegations that Joginder had in the past used or threatened to use physical violence against Juanita, or that Joginder had communicated to defendants any thought of physical violence against Juanita in response to her decision to leave, there would have been no reason for defendants to have concluded that he would use violence in this instance, notwithstanding his access to weapons and his professed desire to prevent her departure by any means.

We also fail to detect the requisite close connection between defendants' conduct and the injury suffered. Plaintiffs would appear to assume that this factor is shown by the complaint's recitation of facts regarding defendants' seemingly incessant efforts to sabotage the marriage. Plaintiffs' assumption is flawed, however, because the only reasonably foreseeable consequence of defendants' actions would be a dissolution of the marriage. Without any allegations that defendants offered assistance or encouragement to Joginder during the critical time immediately preceding the attack, it cannot be said that defendants' course of conduct was closely connected with the injury actually suffered. It is one thing to allege that defendants undertook a campaign designed to foment marital discord and hasten a separation, but quite another to conclude therefrom that the separation would be effected by murder rather than the less drastic means commonly used by estranged spouses.[2]

Moreover, we are not constrained to impose liability under these facts by " 'the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved[ ]' " (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894], quoting *Rowland* v. *Christian*, *supra*, 69 Cal.2d at p. 113). Of the several burdens plaintiffs would have us impose on defendants, only one is arguably slight, that is, the burden of notifying the potential victim of possible danger from the conduct of a third party. (*Pamela L.* v. *Farmer*, *supra*, 112 Cal.App.3d at p. 211.) Nonetheless, the consequences of imposing liability herein, where the alleged negligent failure to act is only marginally related to the harm, would be enormous compared to the benefits which are, at best, highly speculative.

The remaining factors which inform the question of duty weigh to varying degrees in plaintiffs' favor: the certainty of injury to plaintiffs and the moral blame attached to defendants' conduct. There can be no doubt that Juanita's children have suffered an irreparable loss due to Joginder's actions. Similarly, the allegations of the complaint, if true, would justify moral blame for defendants' treatment of both decedents. Fundamental public policy promotes marriage and the sanctity of the marital relationship. However, because of the lack of a close connection between defendants' conduct and

---

[2]For the foregoing reasons, we cannot accept plaintiffs' argument that certain provisions of the Penal Code have any application to this case. The provisions plaintiffs cite include Penal Code section 240 (assault), section 242 (battery), section 245 (assault with a deadly weapon), section 273.8 (legislative finding that spousal abusers present a clear and present danger to California citizens) and section 1000.6, subdivision (d) ("domestic violence" defined to include "recklessly . . . attempting to cause bodily injury to a family or household member or placing a family or household member in reasonable apprehension of imminent serious bodily injury to himself, herself or another").

Joginder's lethal attack on Juanita, this factor weighs only marginally in plaintiffs' favor.

Nonetheless, these two factors do not tip the balance in favor of imposing a duty in the present case. The most important factor, foreseeability (*Pamela L.* v. *Farmer, supra,* 112 Cal.App.3d at p. 211), as well the lack of a close connection between defendants' conduct and the harm suffered, are alone sufficient to decline to recognize a duty arising from these facts.

## IV

■ Turning now to the second theory of negligence upon which the action is premised, plaintiffs contend their allegations established two sets of special relationships giving rise to a duty on defendants' part to warn Juanita of a possibly violent outburst by Joginder.

The first set of relationships was based on the blood relationships between Balbir and Joginder, her son, on the one hand, and between Surinder and Joginder, his brother, on the other hand. The second set of special relationships was based on the relationships by marriage between Balbir and Juanita, her daughter-in-law, on the one hand, and between Surinder and Juanita, his sister-in-law, on the other hand. Plaintiffs contend the existence of these relationships, considered in light of defendants' conduct and their knowledge of Joginder's past, gave rise to a duty to warn Juanita that Joginder was distraught at her impending departure; he was going to use any means at his disposal to prevent it; he possessed weapons; he had threatened to use these weapons in the past; he was prone to violent outbursts; and that Juanita should expect such an outburst in response to her departure. The warning was needed so Juanita could take steps to remove herself from the family dwelling, seek protection from law enforcement, refer Joginder for a diagnostic evaluation, or take other appropriate steps to protect herself.

■ "As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 203.) As formulated by the authors of the Restatement Second of Torts, "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." (Rest.2d Torts, *supra,* § 314.)

"Such a duty may arise, however, if '(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor

and the other which gives the other a right to protection.' [Citations.]" (*Davidson* v. *City of Westminster*, *supra*, 32 Cal.3d at p. 203, quoting Rest.2d Torts, *supra*, § 315.)

"The first category, special relationships between the defendant and person whose conduct needs to be controlled, includes the relationships between parent and child (Rest.2d Torts, *supra*, § 316), master and servant (*id.*, § 317), the possessor of land or chattels (who has a duty to control the conduct of a licensee) (*id.*, § 318), and '[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled . . . .' (*Id.*, § 319.) In all of the above relationships, the *ability* to control the third party is essential. ' "[T]he absence of such an ability is fatal to a claim of legal responsibility" . . . . Where, as in the instant case, the natural relationship between the parties . . . creates no inference of an ability to control, the actual custodial ability must affirmatively appear.' [Citations.]" (*Wise* v. *Superior Court*, *supra*, 222 Cal.App.3d at pp. 1013-1014, original italics.)

 We are not persuaded that plaintiffs have alleged facts sufficient to establish any special relationship which would give rise to a duty either to control Joginder or to warn Juanita. As to the first set of special relationships, plaintiffs have not alleged that defendants had an *ability to control* Joginder. To the contrary, their allegations make clear that he was *uncontrollable*. Therefore, the so-called special relationships between defendants and Joginder, which would give rise to a duty to control only, are nonexistent, and thus, nonactionable. (*Wise* v. *Superior Court*, *supra*, 222 Cal.App.3d at p. 1014.)

The second set of special relationships alleged to create a duty are those respectively between defendants Balbir, as mother-in-law, and Surinder, as brother-in-law, of Juanita. Plaintiffs propose that these special relationships gave rise to a duty of care existing independently of the duty of care alleged to have existed by reason of defendants' conduct and knowledge.

We are reluctant to accept plaintiffs' characterization of their claims. In our view, the general negligence claim and the supposedly independent special relationship claim are in fact indistinguishable.

The concept of a "special relationship" giving rise to a duty either to control a third person or to protect the foreseeable victim of the third person's conduct was created by the courts in order to ameliorate the perceived inequities of the common law rule that one person owed no duty to control the conduct of another. (*Tarasoff* v. *Regents of University of California*, *supra*, at p. 435.) Due to the practical difficulties of rejecting the

common law rule, the courts increased the number of instances in which affirmative duties were imposed by expanding the list of special relationships justifying departure from the rule, but without actually rejecting it. (*Id.* at p. 435, fn. 5.)

It is important to remember, though, that the relevant inquiry in any given case is not simply whether there exists some special relationship in the abstract. Resolution of the issue whether a special relationship exists giving rise to a duty to protect (or warn) comprehends consideration of the same factors underlying any duty of care analysis. (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 203; accord *Nally* v. *Grace Community Church, supra,* 47 Cal.3d at pp. 293, 296.) In other words, to say that a "special relationship" exists is to say nothing other than the factors favoring imposition of a duty of care in particular circumstances outweigh the countervailing factors (one of which is that the harm was caused by a third person). The existence of a "special relationship" does not create the duty. "Special relationship," rather, is simply a label expressing the conclusion that the facts, considered in light of the pertinent legal considerations, support the existence of a duty of care.

We have already analyzed those considerations at length in this opinion. We see no reason to undertake a separate analysis of those factors where the claim is essentially indistinguishable. The only difference between the general negligence claim and the special relationship claim is the so-called special relationship itself. Yet this fact is not really new at all, since our analysis of the general negligence claim necessarily considered defendants' conduct and knowledge in light of the relationship between defendants and Juanita. (See *ante,* pt. III.)

Finally, even if we were disposed to treat the special relationship claim separately from the general negligence claim, the existence of a relationship by marriage between defendants and Juanita does not change our conclusion that the absence of either foreseeability of harm or a close causal connection between defendants' conduct and the injury suffered is dispositive of the duty question. (Compare *Wise* v. *Superior Court, supra,* 222 Cal.App.3d 1008, 1013-1014 [lack of foreseeability fatal to special relationship claim], with *Pamela L.* v. *Farmer, supra,* 112 Cal.App.3d at pp. 211-212 [special relationship created by defendant's affirmative conduct luring victims into known zone of danger]; see also *Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 135-136 [271 Cal.Rptr. 146, 793 P.2d 479, A.L.R.4th 3659], and cases there cited [courts should be reluctant to impose new tort duties when to do so would involve complex policy decisions, especially when those decisions are more appropriately the subject of legislative deliberation and resolution].)

V

The preceding discussion demonstrates that the complaint fails to state a cognizable claim for relief. The trial court had two options in such circumstances. First, it could have granted the summary judgment motion outright because there were no triable issues of fact and defendants were accordingly entitled to judgment. Second, the court could have treated the motion as being in practical effect a motion for judgment on the pleadings. (See pt. II, *ante.*) The practical difference between these two courses of action is that in the latter instance the court must consider whether leave to amend should be granted to plead a cognizable claim, in recognition of the policy that cases and controversies should be decided on their merits wherever possible.

As with the trial court, there are two possible courses of action we might take with respect to the petition. The first is to grant the petition and to direct the trial court to enter summary judgment in favor of defendants. In the posture of this proceeding, exercise of this option as a matter of routine might in some cases lead to the unjust dismissal of meritorious claims based on pleading defects only.

The second option, which we shall exercise, is to notify the parties we are considering treating the summary judgment motion as a motion for judgment on the pleadings. This option affords plaintiffs an opportunity to present to us whatever allegations they propose to add to the complaint to cure its existing deficiencies. In response to our notice, plaintiffs point to the evidence submitted in opposition to the summary judgment motion as providing the basis for allegations which would state a cognizable claim.

On review of this evidence we are not persuaded that the complaint, already twice amended, can be amended again to state a cognizable claim. The first item of evidence is a summary from the Yuba-Sutter Mental Health Services detailing treatment of Joginder's psychological problems. It adds nothing to the existing allegations. The second item consists of several pages from the police report on the two deaths. It fails to supply facts which would buttress plaintiffs' claims against defendants. The final item is the declaration from one of Juanita's children recounting his experiences while living with his mother, his brother, and Joginder in a mobilehome at defendants' orchards. While the declaration supplies evidentiary support for the allegations of the complaint, it does not suggest any new allegations which would materially assist plaintiffs' case.

We are satisfied that plaintiffs have proffered all possible allegations in support their claims against defendants. We are also satisfied that those

allegations are inadequate to state a legally cognizable claim. Therefore, we are not constrained to allow, nor shall we grant, leave to amend.

## VI

We have complied with the procedural prerequisites to issuance of a peremptory writ of mandate in the first instance, as described in *Palma v. U.S. Industrial Fasteners, Inc.*, *supra*, 36 Cal.3d 171. Let a peremptory writ of mandate issue directing respondent superior court to vacate its January 8, 1992, order denying defendants' motion for summary judgment and, treating the motion as one for judgment on the pleadings, grant the same without leave to amend. In all other respects the petition is denied. Defendants shall recover costs of this proceeding.

Sims, J., and Nicholson, J., concurred.