Filed 12/17/21  Freedman v. Cal. Health Benefit Exchange CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MICHAEL FREEDMAN, | C087968 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2016-00191819-CU-CO-GDS) |
| v. | |
| CALIFORNIA HEALTH BENEFIT EXCHANGE, | |
| Defendant and Respondent. | |

This appeal from a grant of summary judgment arises out of a contract dispute between plaintiff Michael Freedman (Freedman) and defendant California Health Benefit Exchange (Covered California).  The contract was to secure Freedman's services as a Covered California certified insurance agent.  Covered California subsequently terminated the contract because of Freedman's harassing and abusive treatment of Covered California employees.

Freedman sued Covered California for damages, alleging five separate causes of action for breach of contract, based primarily on Covered California's purported failure to comply with the contract's dispute resolution procedures.  Covered California moved

1

for summary judgment on the grounds that there was no triable issue of material fact with respect to whether Covered California breached the contract and/or whether any alleged breach was the legal cause of Freedman's asserted harm. The trial court granted the motion.

On appeal, Freedman, appearing in propria persona,[1] contends the trial court erred by (1) misidentifying the issues framed by the pleadings; (2) concluding there were no triable issues of material fact; and (3) allowing Covered California to rely on a procedurally deficient separate statement. We affirm the grant of summary judgment in favor of Covered California.

## BACKGROUND FACTS AND PROCEDURE

Covered California is an independent public entity that administers the state health insurance exchange established to comply with the federal Patient Protection and Affordable Care Act. (Gov. Code, § 100500 et seq.; *King v. Burwell* (2015) 576 U.S. 473, 478-479 [192 L.Ed.2d 483, 489-490].) The health insurance exchange enables eligible individuals and small businesses to compare and purchase private health insurance coverage. (Stats. 2010, ch. 655.) Many of those purchasing coverage through the exchange are eligible for tax credits or cost-sharing subsidies to help offset the cost of health insurance premiums (also known as "premium assistance"). (Stats. 2010, ch. 655, § 2; 26 U.S.C. § 36B(b); Cal. Code Regs., tit. 10, § 6474, subd. (c).)

In 2014, Freedman entered into a standard agreement with Covered California. The purpose of the contract was to secure Freedman's services as an insurance agent to assist consumers with subsidized health care eligibility and enrollment services.

---

[1] Self-represented litigants are held to the same legal standards as parties represented by attorneys. (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.) "[M]ere self-representation is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

The terms and conditions of the contract were set forth in a series of exhibits attached to a one-page form bearing the parties' signatures. Exhibit C to the contract, entitled "General Terms and Conditions," contains a section, "E.1.," addressing "Termination For Cause." That section provides, in relevant part: "The Exchange may terminate this Agreement for cause and be relieved of any payments at any time. Upon notice from the Exchange terminating this Agreement for Cause, Contractor shall immediately discontinue all activities affected, unless the notice directs otherwise, and the Exchange may proceed with the work in any manner deemed appropriate by the Exchange. In such event, the Exchange shall not be liable to pay Contractor any compensation from the date of termination, and all costs to the Exchange shall be remitted to the Exchange within 30 days. The Exchange may, at its sole discretion, offer an opportunity to cure any breach prior to terminating for default. A failure to terminate this Agreement for cause shall not be a waiver of the right to do so with respect to any past, current or future default. Such right of termination shall be without prejudice to any other remedies available to the Exchange. The Exchange may terminate this Agreement for cause without prior written notice to Agent at any time for any of the following occurrences: [¶] . . . [¶] g. Threatening, harassing, or acting in an abusive manner toward the Exchange or any of its employees, agents, representatives, or Consumers. [¶] Although termination is effective immediately, Agent may dispute the Termination for Cause decision pursuant to Section C of this Exhibit, Dispute Provisions."

Section C of the same exhibit, entitled "Dispute Provisions," establishes a four-step dispute resolution process. The first step is for the parties to deal in good faith and informally attempt to resolve the dispute. If the dispute persists, the contractor can move the dispute to the next step by submitting a "written dispute notice" within 15 calendar days after the date of the action causing the dispute. Within 15 calendar days after receipt of the written dispute notice, Covered California must issue a written decision regarding the dispute. If the contractor remains unsatisfied, the contractor may proceed

3

to the third step by submitting a written appeal to Covered California's executive director. The appeal must be submitted within 15 calendar days of the written decision. If an appeal is submitted, the executive director has 30 days to issue a final decision, or the appeal will be deemed denied. The executive director's decision is conclusive and binding unless within 30 days the contractor commences an action in court to contest it.**2**

---

**2** Section C of the contract specifically provides: "1. The parties shall deal in good faith and attempt to resolve disputes informally. If the dispute persists, Contractor shall submit a written dispute notice to the Agent Services within 15 calendar days after the date of the action causing the dispute. The written dispute notice shall contain the following information: [¶] a. The decision or issue under dispute; [¶] b. The reason(s) Contractor believes the decision or position taken by the Exchange is in error (if applicable, reference pertinent Contract provisions); [¶] c. Identification of all documents and substance of all oral communication which support Contractor's position; and [¶] d. The dollar amount in dispute, if applicable.

"2. Within 15 calendar days after receipt of the dispute notice, Agent Services shall issue a written decision regarding the dispute. The written decision shall include the following information: [¶] a. A description of the dispute; [¶] b. A reference to pertinent Contract provisions, if applicable; [¶] c. A statement of the factual areas of agreement or disagreement; and [¶] d. A statement of the State's decision with supporting rationale[.]

"3. If the Contractor is not satisfied with the decision of the Exchange, the Contractor may, within 15 calendar days of the Exchange's decision, submit a written appeal to the Exchange Executive Director. The Executive Director shall then issue a final decision on the dispute within 30 days after receiving Contractor's written appeal. If the Executive Director fails to render a final decision within 30 days after receipt of Contractor's written appeal, it shall be deemed a final decision adverse to the Contractor's contentions. The Executive Director's final decision shall be conclusive and binding regarding the dispute unless Contractor commences an action in a court of competent jurisdiction to contest such decision within 30 days following the date of the final decision.

"4. Pending the final resolution of any dispute arising under, related to or involving the Agreement, Contractor agrees to diligently proceed with the performance of this Agreement, in accordance with the Exchange's instructions. Contractor's failure to diligently proceed in accordance with the Exchange's instructions shall be considered a material breach of this Agreement."

In October 2014, Covered California sent Freedman a letter accusing Freedman of harassing Covered California employees via telephone and e-mail.[3] The letter stated that Freedman's behavior was grounds for termination under section "E(1)(g)" of exhibit C of the contract. The letter warned Freedman that failure to cease such behavior would result in immediate termination of the contract.

On February 6, 2015, Covered California sent Freedman a letter stating that it was terminating the contract due to Freedman's "continued" harassing and abusive conduct toward Covered California employees. Although the letter stated the termination was "effective immediately," it notified Freedman that he could dispute the decision under the "dispute provisions" of the contract.

Invoking the dispute provisions of the contract, Freedman requested the parties attempt to resolve the dispute informally. Ultimately, in March 2015, the parties were able to reach a mutually agreeable resolution of the dispute. There is no dispute that, as part of that resolution, Freedman's Covered California account was reinstated. Freedman contends that Covered California was supposed to issue a formal letter of reinstatement, but never did.

On October 30, 2015, Covered California sent Freedman a letter advising him that it was terminating the contract because, despite Freedman's assurances to the contrary, his harassing and abusive treatment of Covered California staff continued. The letter stated that the termination would take effect on November 2, 2015, and that the decision was "not appealable."

Freedman responded in a letter dated November 16, 2015. In the letter, Freedman denied any further harassment, and claimed he merely challenged staff about what he claimed were "illegal disenrollments" of clients. Freedman also criticized Covered

---

[3] Freedman admitted that in September or October 2014, he used profanity during a phone call in a way that was abusive to a Covered California employee.

California for terminating his contract based, in part, on issues that were resolved in March 2015. Freedman concluded his letter by stating: "This dispute notice is written with intent to meet the requirements of the [dispute provisions of the contract]."

By letter dated December 8, 2015, Covered California responded to Freedman's dispute notice with a written decision in accordance with the dispute provisions of the contract. Covered California's decision described the dispute between the parties as Freedman's ongoing pattern of harassing and abusive telephone conversations with Covered California staff throughout 2014 and 2015. The decision stated that despite Freedman's prior assurances that the unacceptable behavior would cease, Freedman continued to be "combative and argumentative," as well as "intimidating, sarcastic, and demeaning" to staff. Thus, relying on the language in the contract that permits termination for threatening, harassing, or abusive conduct, Covered California decided to terminate his contract. Covered California notified Freedman that he may contest the decision by submitting a written appeal to the executive director within 15 calendar days of the decision. The decision concluded with the following cautionary language: "Should you decide to continue with the dispute process, please make sure to adhere to the timelines discussed above as well as the requirements as set forth [in] Section C.3[.] of Exhibit C in the [contract]."

On December 29, 2015, more than 15 calendar days after the date of the decision, Freedman sent a responsive letter to Covered California's executive director, Peter Lee (Lee). In the letter, Freedman requested clarification of the procedure moving forward. He argued that the contract required an informal, good faith attempt to settle the dispute. But if Covered California was unwilling to try to settle the matter informally, Freedman requested additional time for him to file a formal appeal with the executive director.

There is some dispute about what happened next. Covered California contends that on January 28, 2016, it sent Freedman a letter extending to February 8, 2016, the deadline for him to submit evidence or other materials in support of the appeal.

6

Freedman, however, denied receiving that letter. Freedman claimed he saw the January 2016 letter for the first time at his deposition in February 2018.

It is undisputed that Freedman never submitted any evidence or other documentation in support of an appeal to the executive director.

In February 2016, executive director Lee sent a letter informing Freedman of the "final decision" to terminate his contract, effective February 11, 2016, based on a "long history of abusive and harassing behavior towards Covered California employees."

Freedman filed his complaint on March 11, 2016. The complaint alleges five causes of action for breach of contract. The first alleges that Covered California breached the contract by notifying Freedman that the October 30, 2015 termination decision was " 'not appealable.' "[4] The second cause of action alleges that Covered California breached the contract on or about October 30, 2015, by terminating the contract without affording Freedman the opportunity for informal dispute resolution. The third cause of action alleges that Covered California breached the contract on or about February 11, 2016, by recharacterizing the October 2015 termination as a suspension. The fourth cause of action alleges that Covered California breached the contract in February 2015 by terminating the contract without first engaging in informal dispute resolution. The fifth cause of action alleges that Covered California breached the contract on or about October 30, 2015, by terminating the contract based on issues that had been informally resolved in March 2015. Notably, Freedman's complaint does not challenge Covered California's determination of cause to terminate the contract based on Freedman's harassing and abusive conduct.

Covered California filed a motion for summary judgment on the grounds there was no triable issue of material fact with respect to whether Covered California breached the

---

[4] Like Covered California, we construe this cause of action as alleging that Covered California breached the contract by terminating it without allowing an appeal.

contract and/or whether any alleged breach was the legal cause of Freedman's alleged harm. Freedman opposed the motion.

Finding no triable issue of material fact, the trial court granted the motion and entered judgment in favor of Covered California. Freedman timely appealed.

DISCUSSION

I

*Summary Judgment Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) A trial court should grant a motion for summary judgment if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)[5]

A defendant moving for summary judgment has the initial burden of showing, with respect to each cause of action in the complaint, the cause of action is without merit. A defendant meets that burden by showing one or more elements of the cause of action cannot be established, or there is a complete defense thereto. (*Aguilar, supra*, 25 Cal.4th at pp. 849-850; § 437c, subd. (p)(2).) If the defendant makes such a showing, the burden shifts to the plaintiff to produce evidence demonstrating the existence of a triable issue of material fact. (*Aguilar*, at pp. 849-850.) A triable issue of fact exists when the evidence reasonably would permit a trier of fact, under the applicable standard of proof, to find the contested fact in favor of the party opposing the motion. (*Id*. at p. 850.)

On appeal, we review the trial court's ruling de novo, applying the same legal standard as the trial court. (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 234.) In

---

[5] Undesignated statutory references are to the Code of Civil Procedure.

making this determination, we view the evidence and the reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, resolving any doubts about the propriety of granting the motion in favor of the party opposing it. (*Id.* at p. 235; accord, *Aguilar, supra*, 25 Cal.4th at p. 843.)

" 'The trial court's stated reasons supporting its ruling, however, do not bind this court,' as we review 'the ruling, not its rationale.' [Citation.] Consequently, '[i]f summary judgment was properly granted on any ground, we must affirm regardless of whether the [trial] court's reasoning was correct.' [Citation.]" (*Oliver v. AT&T Wireless Services* (1999) 76 Cal.App.4th 521, 528; accord, *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 588.)

Furthermore, even though Covered California had the burden in the trial court of proving its right to summary judgment, Freedman bears the burden of establishing error on appeal. (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 423.) In the absence of such a showing, the judgment of the lower court is presumed correct. (*Ibid.*)

II

*Identifying the Issues Framed by the Pleadings*

The first step in reviewing a grant of summary judgment in favor of a defendant is to identify the issues framed by the pleadings, since it is these allegations to which the motion must respond by establishing that one or more elements of the cause of action cannot be established or that there is a complete defense to the action. (*Pardee Construction Co. v. Insurance Co. of the West* (2000) 77 Cal.App.4th 1340, 1349-1350, fn. 3; *Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 661.) Freedman argues that the trial court erred by improperly reducing all five causes of action for breach of contract down to a single issue: whether Covered California breached by terminating the contract without affording Freedman the opportunity for a good faith,

informal resolution of their dispute. Freedman argues that his third cause of action is not based on a violation of the informal dispute resolution procedures.[6]

Although we agree with Freedman that the trial court mischaracterized what the third cause of action alleges, we nevertheless conclude that the trial court correctly determined that there is no material dispute of fact and that Covered California is entitled to judgment as a matter of law. We explain.

Freedman's complaint alleges five separate causes of action for breach of contract. All five causes of action allege the same injury from termination of the contract and the resulting loss of business and compensation. But not all five causes of action are premised on the same wrongful act. Unlike the other causes of action, which allege violations of the contract's dispute resolution procedures, the third cause of action alleges Covered California breached the contract by improperly recharacterizing the October 2015 termination as a mere "suspension." Thus, the trial court erred in finding that the third cause of action arises from Covered California's alleged failure to engage in informal dispute resolution.

Suspecting that the trial court had misconstrued the third cause of action, we requested supplemental briefing on whether the error was prejudicial. Having reviewed the parties' supplemental briefs, we find the error was not prejudicial. The trial court reached the correct result because the allegations in the third cause of action are not sufficient to state a cause of action for breach of contract.

A motion for summary judgment necessarily includes a test of the sufficiency of the complaint. (*Hansra v. Superior Court* (1992) 7 Cal.App.4th 630, 638-639.) When a

---

**6** In his reply, Freedman raises similar arguments relating to his first and fifth causes of action. We need not entertain points raised for the first time in a reply brief. (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1162.) But, in any event, his arguments are unavailing, as discussed below.

complaint fails to state facts sufficient to constitute a cause of action as a matter of law, the reviewing court need not reach the question whether the plaintiff's opposition to the motion raised a triable issue of fact, since a defendant has no obligation to present evidence to negate a legally inadequate claim. (*Ibid*.; see also *Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578, 585, fn. 5 [the failure of a pleading to state facts sufficient to constitute a cause of action is not waived and may be raised for the first time on appeal].)

"To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186; see also *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1088 [to support an action for breach of contract, the plaintiff must show it suffered damage].)

In this case, Freedman alleges that Covered California breached the contract in February 2016 by wrongfully characterizing the October 2015 termination as a "suspension." In other words, he alleges Covered California improperly suspended the termination during the pendency of the dispute resolution process. But Freedman has not alleged, and cannot establish, that any of his claimed damages—lost business income and goodwill—were proximately caused by the allegedly wrongful suspension.[7] (*Copenbarger v. Morris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 9 [discussing damages for breach of contract]; *Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 468 [same]; *Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1103 [test for causation in a

---

**7** Covered California's final letter informed Freedman that his right to receive commissions would be discontinued when the termination became effective on February 11, 2016.

breach of contract action is whether the breach was a substantial factor in causing the damages].)  At worst, the allegedly improper suspension meant that Freedman's contract was terminated four months *later* than it otherwise should have been.  (See *Bettencourt v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 1103, 1123 [causation is question of law where the facts admit of only one conclusion].)  And, as Freedman alleges, he was not even aware of the suspension until the February 11, 2016 "final decision" to terminate his contract.[8]

In addition, Freedman's allegation that a suspension was not "allowed" is belied by the unambiguous terms of the contract.  The contract permitted Covered California to terminate a contract "immediately," but allowed Freedman to dispute that termination using the contract's dispute resolution procedures.  Pending the final resolution of any such dispute, the contract explicitly gave Covered California the authority to allow Freedman to proceed with performance of the contract, i.e., to suspend the effect of the termination.  (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866-865 [where terms of contract are clear and unambiguous, interpretation of contract is a question of law].)  Accordingly, under the doctrine of truthful pleading, we may disregard Freedman's contention that a suspension was not allowed by the contract.  (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.)

For both of these reasons, we conclude the grant of summary judgment in favor of Covered California on the third cause of action was correct in result.

III

*Triable Issues of Material Fact*

Other than the third cause of action, discussed above, all of Freedman's claims allege that Covered California breached the contract by violating, in some way, the

---

[8]  Freedman has made no effort to show he could amend his complaint to somehow cure these defects.

12

dispute resolution provisions of the contract. The gravamen of his complaint is that there were two separate and discrete disputes, each of which was entitled to its own dispute resolution process under the contract. Freedman claims the "first dispute" was initiated in February 2015, and resolved by informal agreement in March 2015. He claims the "second dispute" was initiated in October 2015, and ended with the executive director's February 2016 termination letter. Freedman claims that Covered California breached the contract by (1) characterizing the second dispute as a continuation of the first and terminating the contract based on issues that previously were resolved, and (2) denying Freedman his right to the full dispute resolution process with regard to the second dispute, especially his right to an informal dispute resolution process.

The trial court found that it was undisputed that both the February 2015 and October 2015 termination letters were based on "the same exact dispute," namely, Freedman's harassing and abusive conduct toward Covered California employees, which is grounds for immediate termination, without prior notice, under section "E(1)(g)" of the "Termination" provision in the contract's "General Terms and Conditions." The court found that the parties "indisputably engaged in informal resolution efforts related to the February 2015 termination letter and [that] no further informal efforts were required with respect to the October 2015 termination letter related to the same dispute."

Further, because undisputed evidence showed Freedman was given the opportunity to dispute the October 2015 termination and appeal that termination decision to the executive director, the court found that any failure to engage in a second round of informal dispute resolution did not, as a matter of law, cause Freedman's alleged damages.

In sum, the court concluded that "[t]he evidence shows that [Covered California] complied with the Dispute Provisions of the Contract. [Covered California's] evidence is sufficient to show that it did not breach the Contract and sufficient to shift to [Freedman]

13

the burden of demonstrating the existence of a triable issue of material fact," which Freedman failed to do. We agree.

*First cause of action*

Freedman's first cause of action alleges that Covered California breached the contract by stating in the October 2015 termination letter that the decision was not appealable. However, the undisputed evidence shows that, contrary to what was stated in that letter, Freedman was given the opportunity to pursue an appeal. In response to the October 2015 termination letter, Freedman submitted a dispute notice in accordance with the contract's dispute resolution procedures. Covered California accepted Freedman's dispute notice and responded with a "written decision regarding the dispute" in accordance with the contract's dispute resolution procedures. The written decision informed Freedman that he could "contest [that] decision by submitting a written appeal to the Executive Director . . . ." Thus, Freedman had the opportunity to appeal the termination decision; he simply failed to do so.

Freedman argues there were triable issues of material fact relating to the authenticity of the letters on which Covered California relied because they were unsigned or appeared to have been signed electronically. But Covered California presented evidence showing that the letters were sent to Freedman and, with one notable exception, Freedman admitted having received them. Thus, Freedman's arguments were immaterial.

Freedman contends—correctly—that there was a factual dispute about whether he received the January 28, 2016 letter extending his deadline to appeal. But we fail to see how this dispute creates a triable issue of material fact. It is undisputed that under the contract's dispute resolution procedures, Freedman was required to submit a written appeal within 15 calendar days of the written decision issued in response to his November 16, 2015 dispute notice. Freedman admitted he received that decision on December 8, 2015. Thus, under the terms of the contract, his last day to submit a written

14

appeal was December 23, 2015. He did not submit a written appeal by December 23. Instead, on December 29, 2015, Freedman sent a letter requesting clarification and additional time to appeal. Whether Freedman's belated request for more time was granted has no bearing on whether Covered California breached the contract because, by the time Freedman made the request, his appeal already was untimely. In any event, Freedman admits he never submitted an appeal to the executive director. It follows that any dispute about whether Freedman received the January 28 letter did not create a triable issue of material fact.

Freedman argues that there was a material triable issue about whether the October 2015 termination letter constituted a new dispute that required starting the dispute resolution procedures anew. Not so. As the trial court found, the undisputed evidence shows there was only one (ongoing) dispute related to Freedman's harassing and abusive behavior toward Covered California employees. We agree with the trial court that the contract did not require Covered California to engage in a second round of informal dispute resolution when Freedman's harassing and abusive conduct continued. The contract specifically provides that "[a] failure to terminate this Agreement for cause shall not be a waiver of the right to do so with respect to any past, current or future default." Freedman has not presented any evidence that Covered California agreed to relinquish this contract right as part of the informal agreement. Accordingly, Covered California had no obligation to engage in another round of informal dispute resolution for the same underlying dispute.[9]

We also agree with the trial court that Freedman cannot establish that any alleged failure to engage in additional informal dispute resolution caused him any harm. The

---

[9]     Contrary to what Freedman contends, Covered California did not deny there was an informal resolution, it simply asserted that Freedman failed to live up to his promise to cease the abusive and harassing behavior.

15

damages that Freedman allegedly suffered were proximately caused by the termination of his Covered California certification, not by any supposed breach of the contract's informal dispute resolution procedures. By its very nature, an informal dispute resolution procedure is merely an agreement to try to agree. The logical remedy for breach of such an obligation is an order compelling enforcement of the contract, not an award of damages based on some hypothetical agreement the parties might have been able to negotiate. For all these reasons, we conclude the court properly granted summary judgment on this cause of action.

*Second cause of action*

Freedman's second cause of action, alleging that Covered California breached the contract by failing to follow the informal dispute resolution procedures fails for the same reason as the first cause of action. Covered California had no contractual obligation to engage in a second round of informal dispute resolution for the same underlying dispute.

*Fourth cause of action*

Freedman's fourth cause of action alleges that Covered California breached the informal dispute resolution procedures of the contract in connection with the February 2015 termination letter, presumably by terminating the contract without first attempting to resolve the dispute informally. This claim also fails as a matter of law. As discussed above, the contract plainly permits Covered California to terminate the contract at any time, without prior notice, for threatening, harassing, or abusive conduct, subject to the contractor's right to dispute the termination using the dispute resolution procedures. The undisputed evidence shows that is what happened here.

*Fifth cause of action*

Freedman's fifth cause of action essentially alleges that the parties' agreement required Covered California to treat the first and second termination letters as separate disputes. As discussed above, we disagree.

16

Neither does Covered California's alleged failure to provide a formal letter of reinstatement create a triable issue of material fact, as there was no dispute that Freedman was reinstated, regardless of whether it was documented by a formal letter.

The court properly granted summary judgment.

IV

*Discretion to Accept a Noncompliant Separate Statement*

Freedman argues the trial court erred in granting summary judgment because the separate statement filed in support of the motion failed to "separately identify" the causes of action at issue in the motion. Freedman argues that this was a mandatory requirement under California Rules of Court, rule 3.1350(d)(1)(A), and that Covered California's failure to comply with the rule compels reversal of the judgment. We find no reversible error.

As our colleagues in Division One of the Fourth Appellate District explained in *Truong v. Glasser* (2009) 181 Cal.App.4th 102, "the court's power to deny summary judgment on the basis of failure to comply with California Rules of Court, rule 3.1350 is discretionary, not mandatory." (*Truong, supra*, at p. 118.) Thus, we are not required to reverse summary judgment simply because the court considered filings that were noncompliant. We reverse only if there has been a prejudicial abuse of discretion. (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1208; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

Here, even if we assume the separate statement was procedurally deficient, Freedman has failed to demonstrate how the court prejudicially abused its discretion in overlooking the defect. There is no showing that the failure to separately identify the causes of action alleged in the complaint—all of which are at issue when a party moves for summary judgment—impaired Freedman's ability to respond to the motion or the court's ability to review it. The primary purposes behind the separate statement

17

requirement were not violated.  (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co., supra*, 133 Cal.App.4th at p. 1210.)  Thus, we find no grounds for reversal.

DISPOSITION

The judgment is affirmed.  Covered California shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


                                          KRAUSE          , J.



We concur:



      MURRAY         , Acting P. J.



      RENNER         , J.


18