[No. B069382. Second Dist., Div. Six. Oct. 5, 1993.]

DAVID TODD, Plaintiff and Appellant, v.
DENNIS DOW et al., Defendants and Respondents.

## COUNSEL

Cardozo, Curtis & Arata, Marie Sovey Silveira and Richard J. Sordello, Jr., for Plaintiff and Appellant.

Radovich, Cumberland & Coates and Greg A. Coates for Defendants and Respondents.

## OPINION

**YEGAN, J.**—Here we decide whether parents are liable in tort because their adult son negligently shot a cousin with his own firearm. The victim, David Todd, appeals from a summary judgment entered in favor of respondents, David Dow and Carol Dow (parents). The issue presented is whether parents breached a duty of care by not controlling their son's use of a firearm. We affirm the grant of summary judgment.

This action stems from a shooting that took place in San Luis Obispo. On August 22, 1989, Dennis Dow (Dennis) took his Springfield rifle that was stored at his parents' house in Sonoma County and drove several hundred miles to San Luis Obispo to visit appellant. Dennis (age 24) and appellant (age 27) were cousins and close friends. Both collected firearms.

On August 23, 1989, Dennis and appellant decided to go target shooting. Dennis lined up 19 firearms in appellant's bedroom. When appellant returned from work, Dennis and appellant engaged in mock hand-to-hand combat, each holding a rifle with a bayonet attached. As Dennis lowered his Springfield 30.06 rifle, it discharged resulting in appellant's paraplegia.

Appellant filed a complaint for personal injuries against Dennis, his wife, and his parents. Dennis' parents were named in the fifth and seventh causes of action for negligence and negligent entrustment. The complaint alleged that they held a special relationship with Dennis and ". . . breached their duty to plaintiff DAVID TODD by their failure to exercise control over their son."

Parents moved for summary judgment. At the hearing on the motion, evidence was presented that the Springfield rifle, a World War I relic, was purchased by Dennis with his own funds when he was 18 years old. Dennis moved out of parents' house in 1985 after he married. He stored part of his firearm collection, including the Springfield rifle, in his former bedroom at parents' house.

Prior to the shooting, Dennis' wife, Lynn Dow, complained that Dennis and appellant liked to play around with guns. Respondent, Donald Dow, became concerned and told Dennis and appellant that "they knew better than to be horsing around with guns, loaded or not."

Appellant was deposed and testified that Dennis, a member of the National Rifle Association, was a responsible owner and user of firearms. Prior to the shooting, he never saw Dennis use a firearm in an unsafe or improper manner. Appellant was unaware of any facts that "would indicate that Carol Dow and Donald Dow for some reason should have known to restrict Dennis Dow's access to his weapons." Appellant also stipulated that he was "unaware of any facts to indicate that either Donald Dow or Carol Dow should have warned him that Dennis was coming to see [appellant] to go target shooting."

Despite these admissions, appellant opposed the motion for summary judgment based on the theory that gun safety was a problem in parents' household. Parents operated a day-care business and allowed Dennis to keep firearms under a bed near the children. Although Dennis did not live in the house, he had a key and was free to come and go at his pleasure. His mother, Carol Dow, told him several times that he should not keep the firearms under the bed.

Carol Dow was deposed and testified that she had never seen Dennis do anything with the firearms that was unsafe. She did, however, hear about a 1969 incident where Dennis shot his sister with a BB gun. She later changed her deposition to read that "Dennis did not shoot his sister, it was our daughter, Donna."[1]

The trial court determined that no triable factual issues existed to support a claim for negligence or negligent entrustment: "[D]espite plaintiff's showing that these parents did have some information that their son fooled around

---

[1]Code of Civil Procedure section 2025, subdivision (q)(1) permits a deponent to change the form or substance of his or her answer within 30 days of completion of the deposition transcript. (See Weil & Brown, Cal. Practice Guide, Civil Procedure Before Trial (The Rutter Group 1992) ¶ 8:774, p. 8E-88.)

with guns, which is incredibly stupid, I don't think that there is any duty here when the son is an adult and not living in the home, and I don't know that the defendants would even have any right to tell him he couldn't take his guns whenever he chose to do so." As indicated, summary judgment was granted for respondents.

Our review of the summary judgment motion requires that we apply the same three-step process required of the trial court. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.] [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] . . . [¶] . . . [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]" (*Id.*, at pp. 1064-1065.)

"As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894]; see also *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) "However, there are judicially created exceptions which impose a duty on a defendant to control the conduct of others when the defendant stands in some special relationship either with the person whose conduct needs to be controlled or with the person who is the foreseeable victim. [Citations.]" (*Jacoves* v. *United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 114 [11 Cal.Rptr.2d 468].)

In determining whether the defendant owes the plaintiff a duty of care in a given case, the courts apply a balancing test derived from *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]. "[T]he major [considerations] are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved. [Citations.]" (*Id.*, at p. 113; *Tarasoff* v. *Regents of University of California, supra*, 17 Cal.3d at p. 435.)

Several of these considerations compel the conclusion of no duty. Missing here is foreseeability of harm, the close connection between parents' "conduct" and appellant's injury, and moral blame. Dennis purchased the rifle several years before the incident. The fact that he removed the rifle from storage and drove several hundred miles to go target shooting imposed no duty on parents to supervise or control his activities.

Appellant, however, argues that the parent-child relationship created a duty of care. We disagree. "The existence of a 'special relationship' does not create the duty. 'Special relationship,' rather, is simply a label expressing the conclusion that the facts, considered in light of the pertinent legal considerations, support the existence of a duty of care." (*Hansra* v. *Superior Court* (1992) 7 Cal.App.4th 630, 646 [9 Cal.Rptr.2d 216].) Before a special relationship can give rise to a duty of care, it must be shown that parents had the ability to control Dennis. They did not. Dennis was an adult. The absence of an ability to control is fatal to a claim of legal responsibility. (*Id.*, at p. 645; *Wise* v. *Superior Court* (1990) 222 Cal.App.3d 1008, 1013 [272 Cal.Rptr. 222].)

The control, duty, foreseeability, and causation issues raised in appellant's complaint are akin to the negligence claims discussed in *Wise* v. *Superior Court, supra*, 222 Cal.App.3d 1008. In *Wise*, the defendant's husband collected firearms and used them to launch a sniper attack from the roof of his home. Husband shot and severely injured several motorists before taking his own life. The victims brought suit against wife based on the theory that she breached a duty of care by not controlling husband's conduct. The complaint alleged that husband was a "human time bomb," had a history of erratic and violent behavior, kept a large arsenal of weapons in the house, abused drugs and alcohol, and threatened to shoot a neighborhood cat. (*Id.*, at p. 1012.)

Husband's violent behavior prompted wife to leave the family home a week before the attack. The plaintiffs contended that wife was negligent when she permitted husband to remain in the residence with the weapons without warning others. Plaintiffs claimed that the attack might have been prevented had wife removed the firearms, monitored husband's activities, notified law enforcement, initiated a psychiatric hold, or evicted him from the residence. (222 Cal.App.3d at p. 1012.)

The Court of Appeal held that no cause of action could be stated for negligence or negligent entrustment. It rejected plaintiffs' argument that special relationship theories of recovery can be expanded to provide innocent victims a source of recovery. The court concluded that there were many public policy reasons for limiting liability. "Chief among these is our belief

that the responsibility for tortious acts should lie with the individual who commits those acts; absent facts which clearly give rise to a legal duty, that responsibility should not be shifted to a third party. We sympathize with plaintiffs' misfortune. . . . The issue before us, however, is whether petitioner must assume the blame for these injuries. Under long-established legal authority, the answer is no." (222 Cal.App.3d at pp. 1015-1016.)

■ The same analysis applies here even though the instant facts pale by comparison. Dennis threatened no one, exhibited no violent conduct, and intended no harm. His parents merely allowed him to store an antique rifle at their residence.

Parents had no duty to control or supervise Dennis once he took the rifle off the premises. No triable facts were presented that a special relationship existed and gave rise to a duty to control or warn. ■ "[T]he relevant inquiry in any given case is not simply whether there exists some special relationship in the abstract. . . . [T]o say that a 'special relationship' exists is to say nothing other than the factors favoring imposition of a duty of care in particular circumstances outweigh the countervailing factors (one of which is that the harm was caused by a third person)." (*Hansra* v. *Superior Court, supra,* 7 Cal.App.4th 630, 646.) ■ Liability may not be premised on a defendant's nonfeasance if the defendant did not create the peril.[2] (Compare *Talbott* v. *Csakany* (1988) 199 Cal.App.3d 700, 706 [245 Cal.Rptr. 136] [gift of vehicle to habitual adult drunk driver imposed no liability if he had access to other vehicles], with *Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 513-515 [238 Cal.Rptr. 436] [no liability for failure to provide restaurant customers security guard protection].)

The seventh cause of action for negligent entrustment fails for the same reason. ■ Liability for negligent entrustment arises from the act of entrustment, not the relationship of the parties. (*Mettelka* v. *Superior Court* (1985) 173 Cal.App.3d 1245, 1248 [219 Cal.Rptr. 697].)

■ Parents did not sell, loan, furnish, or supply the rifle. They merely allowed Dennis to store the rifle at their house. ■ "Involuntary bailments and storage of articles as a personal favor are obviously gratuitous,

---

[2] "[O]ne is not obligated to act as a 'good samaritan.' [Citations.] This doctrine is rooted in the common law distinction between action and inaction, or misfeasance and nonfeasance. Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention." (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 49 [123 Cal.Rptr. 468, 539 P.2d 36].) Under the common law rule, liability is often imposed for misfeasance but rarely imposed for nonfeasance absent a special relationship. (*Jacoves* v. *United Merchandising Corp., supra,* 9 Cal.App.4th 88, 114, fn. 16.)

and the responsibility of a gratuitous bailee is to use only slight care. [Citations.]" (4 Witkin, Summary of Cal. Law (9th ed. 1987) Personal Property, § 136, p. 125; Civ. Code, § 1884.)

As bailees, parents were required to deliver the property to Dennis on demand. (Civ. Code, § 1822.) Their duties terminated the day before the shooting when Dennis took possession of the rifle. (Civ. Code, § 1847, subd. (1).) Simply stated, there was no entrustment.

"A bailee does not 'entrust' a chattel when returning it to the bailor. Indeed, the Restatement describes those who may be liable for supplying dangerous chattels to incompetents as 'sellers, lessors, donors or lenders, and [ ] all kinds of *bailors*, irrespective of whether the bailment is gratuitous or for a consideration.' (Rest.2d Torts, § 390, com. a, at p. 315, italics added.) Conspicuously absent from the list, of course, are bailees. [Citation.]" (*Knighten* v. *Sam's Parking Valet* (1988) 206 Cal.App.3d 69, 75 [253 Cal.Rptr. 365].)

Appellant has cited no authority for the proposition that parents had a duty to hide the rifle. Dennis owned the rifle and could have stored it anywhere. The causal connection between the "bailment" and harm suffered is too tenuous to state a claim for negligent entrustment.

Finally, we note that the complaint alleged that parents should have controlled Dennis because of his "propensity for violence, . . . emotional instability and dangerousness to plaintiff DAVID TODD." The allegation lacked any factual basis. No triable facts were presented that Dennis was violent, intended to harm appellant, or suffered from emotional problems. During his hospitalization, appellant told Dennis and the police that the shooting was accidental.

Although firearms are dangerous instrumentalities, parents' relationship with Dennis did not, as a matter of law, create a duty to warn, supervise, or control. "Where, as in the instant case, the natural relationship between the parties . . . [that of parents and adult son] creates no inference of an ability to control, the actual custodial ability must affirmatively appear." (*Megeff* v. *Doland* (1981) 123 Cal.App.3d 251, 261 [176 Cal.Rptr. 467], fn. omitted [upholding summary judgment for daughter who had no ability to control violent acts of her father].)

Although we sympathize with appellant's misfortune, the trial court correctly determined that parents did not owe or breach a duty of care to him.

The summary judgment is affirmed. Respondents are awarded costs on appeal.

Stone (S. J.), P. J., and Gilbert, J., concurred.