IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 3, 2003 Session

## JASMINE A. ALI v. ERIC N. FISHER, ET AL.

**Appeal from the Circuit Court for Sullivan County**
**No. C33888(M)     John S. McLellan, III, Judge**

**Filed August 29, 2003**

**No. E2003-00255-COA-R3-CV**

After an automobile accident in which she suffered serious injuries, Jasmine A. Ali ("Plaintiff") sued both the driver of the automobile, Eric N. Fisher ("Fisher"), and the owner of the automobile, Thomas Scheve ("Scheve"). The claim against Scheve was based on negligent entrustment. Prior to trial, Plaintiff and Scheve were in sharp disagreement as to whether Scheve's alleged negligent entrustment resulted in Scheve's being vicariously liable for Fisher's conduct, or whether Scheve's negligence should be apportioned by the jury pursuant to comparative fault principles. The Trial Court concluded Scheve's alleged negligent entrustment should be apportioned by the jury pursuant to comparative fault principles. After a trial, the jury returned a verdict for Plaintiff and apportioned fault, 80% to Fisher and 20% to Scheve based on his negligent entrustment of the vehicle to Fisher. The Trial Court entered a judgment in accordance with the jury's verdict. Plaintiff filed a Motion to Alter or Amend Judgment asking the Trial Court to reverse its earlier pre-trial ruling and hold Scheve vicariously liable for Fisher's negligence because Scheve negligently entrusted the vehicle to Fisher. The Trial Court granted the motion and amended the judgment which, in effect, held Scheve and Fisher jointly and severally liable for the entire amount of the jury's award. Scheve appeals. We hold the Trial Court erred when it amended the original judgment after concluding, post-trial, that Scheve was vicariously liable for Fisher's conduct. We vacate the amended judgment and reinstate the original judgment of the Trial Court entered in accordance with the jury's verdict apportioning fault.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Vacated in Part and Affirmed in Part; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Charles T. Herndon, IV, and Bradley E. Griffith, Johnson City, Tennessee, for the Appellant Thomas Scheve.

Jack M. Vaughn, Kingsport, Tennessee, for the Appellee Jasmine A. Ali.

## OPINION

## Background

This lawsuit arises out of an automobile accident in Kingsport, Tennessee. In her Complaint, Plaintiff claimed the accident happened after Fisher ran a red light while fleeing from the police at a high rate of speed. Plaintiff claims the automobile being driven by Fisher came to rest on top of her vehicle. Plaintiff asserted Fisher was guilty of negligence, gross negligence, and violating numerous statutes, including those prohibiting reckless driving, driving under the influence of an intoxicant, and driving on a revoked license. Plaintiff also sued Gary Scheve claiming he was the owner of the vehicle driven by Fisher. Plaintiff claimed Fisher was acting as Gary Scheve's agent, and, therefore, Gary Scheve was vicariously liable for her injuries. Plaintiff also claimed Gary Scheve negligently entrusted the vehicle to Fisher. Plaintiff sought compensatory and punitive damages from both Fisher and Gary Scheve.

Plaintiff filed an Amended Complaint adding Thomas Scheve as a defendant. In the Amended Complaint, Plaintiff alleged that Thomas Scheve was in possession of the vehicle prior to giving Fisher his permission to use the vehicle. According to Plaintiff, Thomas Scheve knew of Fisher's propensity to operate motor vehicles negligently and while under the influence of intoxicants. Plaintiff also claimed Thomas Scheve knew or should have known that Fisher did not possess a valid drivers license. Plaintiff asserted in the amended complaint that Thomas Scheve was vicariously liable for Fisher's acts under theories of agency and negligent entrustment.

In his Answer, Thomas Scheve admitted he owned the vehicle driven by Fisher and stated that the vehicle had been a gift from his father, Gary Scheve, who had not yet transferred title of the vehicle. Based on these admissions, Plaintiff nonsuited the claims against Gary Scheve and the lawsuit proceeded with Fisher and Thomas Scheve ("Scheve") as the only defendants.

Prior to trial, the Trial Court heard arguments regarding the negligent entrustment claim against Scheve. According to Plaintiff, if the jury were to conclude Scheve had negligently entrusted his vehicle to Fisher, then Scheve should be vicariously liable for Fisher's actions, relying on Tennessee Pattern Jury Instruction 12.5. Counsel for Plaintiff then stated "there's no comparative fault here … we do not know how you can compare the fault with Fisher and Scheve because they're two separate instances … which yield a vicarious liability situation." Scheve's counsel disagreed, arguing Scheve's potential negligence should be apportioned by the jury as a matter of comparative fault.[1] In resolving this dispute, the Trial Court observed that there were certain criteria that had to be met before a jury could find negligent entrustment, and these criteria were "independent of any acts of the driver of the vehicle, so it's a separate tort." Although the Trial Court expressed uncertainty on how to proceed because there was no controlling Tennessee authority on point, the

---

[1] Fisher was *pro se* at trial and did not take a position one way or the other regarding the applicability of vicarious liability or comparative fault principles.

Trial Court nevertheless concluded the trial should proceed under a comparative fault analysis. The Trial Court instructed the parties to revise their proposed jury verdict forms to conform to this ruling.

The jury trial was in May of 2002. For the sake of brevity, we will discuss only the testimony and proof introduced at trial which is pertinent to this appeal.

The first witness was Burke Murray ("Murray"), a police officer with the Kingsport Police Department who investigated the automobile accident. According to Murray, the events on November 25, 2000, began to unfold when the driver of a vehicle traveling behind Fisher reported to the police that the car was being driven erratically. Two police vehicles were dispatched. After locating the Fisher vehicle,[2] the officers turned on blue lights and sirens in an attempt to stop Fisher. Speed was maintained at approximately 45 miles per hour until one of the officers pulled up beside Fisher. When this happened, Fisher looked at the officer, took off, and accelerated to speeds over 100 miles per hour according to witnesses. Fisher's vehicle was traveling at a very high rate of speed when it hit Plaintiff's vehicle. After the initial impact, Fisher's vehicle became airborne, struck a traffic light pole, and came back down to rest on top of Plaintiff's vehicle.

Murray identified a report by the Tennessee Bureau of Investigation which indicated Fisher's blood alcohol content at the time of the accident was .21, which is more than twice the "legal limit." Murray also identified certified copies of the judgments from the various criminal proceedings brought against Fisher as a result of his actions on the day of the accident. These documents reveal that, pursuant to guilty pleas, Fisher was convicted of: (1) felony evading arrest (Class D felony); (2) two counts of reckless aggravated assault (Class D felonies); (3) reckless endangerment (Class E felony); (4) driving under the influence, second offense (Class A misdemeanor); and (5) driving on a revoked license, third offense (Class B misdemeanor).

One of the primary issues at trial was Plaintiff's claim against Scheve for negligent entrustment. As pertinent to this issue, Murray testified that he prepared a statement which was signed by Scheve on November 30, 2000. This statement reads:

> On 11-21-00 I was leaving to go out of town for the holidays. I was at my place of employment, at Minglewood Mtn Bistro, in Johnson City, Tenn. I was talking to my friend/coworker Eric Fisher. I don't recall if I offered to let Eric use the car or if he asked to do so. I remember telling him if he didn't have any other way to work or was in a bind, he could use it. I also told him he could use my apartment since its (sic) close to my work. He told me that he would be careful and wouldn't drive it if he was "messed up." After that I left for the airport.

---

[2] By referring to the vehicle being driven by Fisher as the "Fisher vehicle," we do not intend to imply that Fisher was the owner of said vehicle.

I didn't learn about the accident until the day after the accident. My father had called me.

This statement is true and accurate and correct to the best of my knowledge.

Murray testified he asked Scheve what he meant by "messed up," and Scheve told him that Fisher had been known to drink and drive and he did not want Fisher to drive his car while he was drinking.

The next witness was Fisher, who testified he had a drug and alcohol problem at the time of the automobile accident. Fisher had known Scheve for only a couple of months. They met when Fisher began working at the Minglewood Mountain Bistro. Fisher testified he would "get high" during breaks and also drank a lot at work. According to Fisher, he and Scheve would hurry while serving customers so they could take a break and go upstairs to smoke marijuana. The servers and the cooks would try to coordinate their break times so they could smoke marijuana together because it was not as much fun to smoke marijuana alone. There were times when Scheve would give Fisher a ride home and when they arrived at Fisher's residence, they would go inside and smoke marijuana and drink alcohol. Fisher stated he was "pretty sure" Scheve knew he had lost his drivers license for driving under the influence. Fisher stated it was common knowledge why he lost his drivers license and his lack of a license was why Scheve gave him rides home. Fisher claimed there were many occasions where he and Scheve drank and smoked marijuana together. Fisher testified that when Scheve went out of town in November of 2000, Scheve allowed him to use his car to drive to and from work. He later stated they "did not make a list … we did not specify where we (sic) could and could not use the car." Fisher testified to the events which occurred before the accident and the amount of alcohol he consumed, etc. The last thing Fisher could remember was playing a video game on the computer, "and the next thing I knew, I was looking at my mom in the hospital." Fisher accepted full responsibility for the accident.

Scheve testified he worked with Fisher for around two or two and one-half months. Scheve acknowledged he would on occasion give Fisher a ride home from work. According to Scheve, it was possible he may have had a beer with Fisher after taking him home from work. Scheve claimed they never "sat around getting plastered." Scheve denied ever taking drugs or seeing Fisher smoke marijuana or take drugs while he was at Fisher's residence. Scheve admitted he allowed Fisher to stay at his apartment when he was out of town. Scheve did this because he lived very close to the restaurant and Fisher would not need to locate rides to and from work. Although Scheve could not remember exactly what he told Fisher regarding use of his car, it was something "along the lines of … if there's an emergency or if you're in a bind or you get stuck or something, that – that he could use it." Scheve denied knowing of Fisher's drug and alcohol use. He did, however, recall seeing Fisher drink alcohol at work on an infrequent basis. Scheve may have drank with Fisher a couple of times, but denied ever smoking marijuana with Fisher and, in fact, denied ever having smoked marijuana at all. Scheve denied any knowledge of Fisher having a prior conviction for driving under the influence or not having a valid drivers license. With regard to the

statement he gave Officer Murray, Scheve testified it was Fisher who stated he would not drive the car "messed up," as opposed to Scheve telling Fisher not to drive in that condition.

The jury found Fisher was eighty percent (80%) at fault for Plaintiff's injuries. The jury also concluded Scheve was guilty of negligent entrustment and allocated twenty percent (20%) of the fault to him. The jury set Plaintiff's compensatory damages at $500,000. The jury then concluded Plaintiff was entitled to punitive damages from both Defendants. After hearing further proof on this issue, the jury awarded Plaintiff punitive damages from Fisher in the amount of $20,000, and from Scheve in the amount of $5,000. In accordance with comparative fault principles, on June 4, 2002, the Trial Court entered judgment against Fisher for $420,000, representing $400,000 in compensatory damages and $20,000 in punitive damages. The judgment entered against Scheve was for $105,000, representing $100,000 in compensatory damages and $5,000 in punitive damages.

Plaintiff filed a Motion to Alter or Amend Judgment. In this motion, Plaintiff argued Scheve should be responsible for 100% of the damages under vicarious liability principles because the jury found Scheve was guilty of negligent entrustment. Scheve filed a Motion to Alter or Amend Judgment requesting the Trial Court to direct a verdict in his favor on the issue of punitive damages. After a hearing was held on both motions, the Trial Court granted Plaintiff's motion and denied Scheve's motion. The Trial Court requested further briefing from the parties on whether Scheve could be held vicariously liable for the punitive damages awarded against Fisher. Once the Trial Court received further briefing on this issue, it entered an Amended Judgment holding Scheve vicariously liable for the entire amount of the judgment, including both compensatory and punitive damages. The Trial Court stated Plaintiff "shall have and recover the amount of $500,000 in compensatory damages and $25,000 in punitive damages from Defendant Scheve, Defendant Fisher, or both." On November 22, 2002, Scheve filed a motion for new trial claiming the Trial Court erred in holding him vicariously liable for compensatory and punitive damages and further erred in not directing a verdict in his favor on Plaintiff's claim for punitive damages. The Trial Court denied this motion.

Scheve appeals, claiming the Trial Court erred in eliminating the jury's allocation of comparative fault and holding him liable for the full amount of compensatory and punitive damages. Scheve also claims the Trial Court erred in not granting him a new trial after the Trial Court ruled Scheve was liable under vicarious liability principles after the Trial Court specifically ruled before trial that this theory was not applicable. Finally, Scheve claims the Trial Court erred in not directing a verdict in his favor on Plaintiff's claim for punitive damages as there was no material evidence to support this aspect of the jury's verdict.

**Discussion**

The issue of whether Scheve's liability for negligent entrustment was subject to apportionment under comparative fault principles or whether it resulted in Scheve's being vicariously liable for Fisher's negligence is a question of law. With respect to legal issues, our

review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

As discussed previously, the Trial Court concluded prior to trial that Scheve's alleged negligent entrustment was subject to apportionment and did not result in vicarious liability. The trial was carried out according to this ruling and the jury was instructed accordingly. After the jury returned its verdict and apportioned fault between Fisher and Scheve, the Trial Court reversed its earlier ruling and concluded Scheve was vicariously liable for Fisher's conduct, stating Plaintiff "shall have and recover the amount of $500,000 in compensatory damages and $25,000 in punitive damages from Defendant Scheve, Defendant Fisher, or both." Interestingly, with this final ruling, the Trial Court not only held Scheve liable for Fisher's conduct, but also held Fisher liable for Scheve's conduct. In effect, the Trial Court held both Defendants jointly and severally liable.

When our Supreme Court adopted a comparative fault system in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), it acknowledged this new system rendered the doctrine of joint and several liability obsolete. More specifically, the Court stated:

> [T]oday's holding renders the doctrine of joint and several liability obsolete. Our adoption of comparative fault is due largely to considerations of fairness: the contributory negligence doctrine unjustly allowed the entire loss to be borne by a negligent plaintiff, notwithstanding that the plaintiff's fault was minor in comparison to defendant's. Having thus adopted a rule more closely linking liability and fault, it would be inconsistent to simultaneously retain a rule, joint and several liability, which may fortuitously impose a degree of liability that is out of all proportion to fault.

*McIntyre*, 833 S.W.2d at 58.

Although the Supreme Court has made it clear that the doctrine of joint and several liability has been rendered obsolete, the doctrine of vicarious liability suffered no such fate. Vicarious liability is the imposition of liability "on one person for the actionable conduct of another, based *solely* on a relationship between the two persons." *Harper v. Churn*, 83 S.W.3d 142, 147 (Tenn. Ct. App. 2001)(quoting *Browder v. Morris*, 975 S.W.2d 308, 322 (Tenn. 1998)(emphasis added)). Vicarious liability is imputed legal responsibility for the acts of another; "for example, the liability of an employer for the acts of an employee, or a principal for torts and contracts of an agent." *Id*. As explained in *Browder v. Morris*, 975 S.W.2d 308 (Tenn. 1998):

> [V]icarious liability, or imputed negligence, continues to be viable after the adoption of comparative fault. One who is vicariously liable is held to be financially responsible for the tortious actions of another, even though the vicariously liable party was not negligent. *See*

> *Prosser and Keeton on Torts*, § 69 (5th ed. 1984). The adoption of comparative fault did not change this principle. Vicarious liability still applies, for example, where liability attaches under the family purpose doctrine, respondeat superior, or similar circumstance where liability is vicarious due to an agency-type relationship between the active, or actual, wrongdoer and the one who is vicariously responsible. *See Camper v. Minor*, 915 S.W.2d 437, 447-48 (Tenn. 1996).

*Browder*, 975 S.W.2d at 311, 312 (footnotes omitted).

In support of her argument that Scheve is vicariously liable for Fisher's conduct, Plaintiff primarily relies on the opinion of the Texas Court of Appeals in *Loom Craft Carpet Mills, Inc. v. Gorrell*, 823 S.W.2d 431 (Tex. Ct. App. 1992).[3] In *Gorrell*, the Court concluded that liability for negligent entrustment was derivative in nature and the negligence of the entrustor should not be apportioned. According to that Court:

> Negligent entrustment liability is derivative in nature. *See Rodgers v. McFarland*, 402 S.W.2d 208, 210 (Tex. Civ. App. - El Paso 1966, writ ref'd n.r.e.). While entrusting is a separate act of negligence, and in that sense not imputed, it is still derivative in that one may be extremely negligent in entrusting and yet have no liability until the driver causes an injury. If the owner is negligent, his liability for the acts of the driver is established, and the degree of negligence of the owner would be of no consequence. When the driver's wrong is established, then by negligent entrustment, liability for such wrong is passed on to the owner. *Id.* We believe the better rule is to apportion fault only among those directly involved in the accident, and to hold the entrustor liable for the percentage of fault apportioned to the driver.

*Gorrell*, 823 S.W.2d at 432. In reaching this conclusion, the *Gorrell* Court specifically declined to follow cases from other jurisdictions in which fault had been apportioned to the negligent entrustor. *Gorrell*, 823 S.W.2d at 432 n.7(declining to follow *McCart v. Muir*, 230 Kan. 618, 641 P.2d 384 (1982) and *Jones v. Fleischhacker*, 325 N.W.2d 633 (Minn.1982)). In *McCart*, the Kansas Supreme Court concluded the "nature and extent of negligence of the [entrustor] and of the entrustee are separate and distinct. The percentages of fault may be different in amount and should be determined separately." The *McCart* Court stated vicarious liability principles did not apply because the

_____

[3] The opinion in *Gorrell* is a partially published opinion. Pursuant to the *Gorrell* Court's instructions, a significant part of the opinion was designated as unpublished text. The unpublished portion of the *Gorrell* opinion has no direct bearing on the issues in the present case.

entrustor's liability was "direct, separate, and not imputed." *McCart*, 230 Kan. at 623-24, 641 P.2d at 389-90.

Scheve quite correctly points out that there are several other jurisdictions which have likewise reached a result contrary to that reached by the *Gorrell* Court. For example, in 65 C.J.S. *Negligence* §157 (2000), the following is found:

> Negligent entrustment is not a theory of vicarious liability and may be maintained against a person who, because he or she entrusts personal property to a known reckless individual, is directly negligent. Liability for negligent entrustment arises from the act of entrustment, not the relationship of the parties.

*Id*. at §157, p. 480-81 (citing *Neale v. Wright*, 322 Md. 8, 585 A.2d 196 (1991); *Todd v. Dow*, 19 Cal. App. 4th 253, 23 Cal. Rptr. 2d 490 (2d Dist. 1993)).

In summary, cases such as *Gorrell* acknowledge that while negligent entrustment does involve an independent act of negligence on the part of the entrustor, it is nonetheless a derivative claim because liability is dependent on the entrustee causing an injury. The other line of cases hold that because negligent entrustment is an independent act of negligence, liability is not imputed to the entrustor and his or her negligence must be apportioned.

In the present case, the parties and this Court were unable to locate any post-*McIntyre* Tennessee authority discussing the precise issue of whether a party's liability for negligent entrustment is vicarious or whether it should be apportioned under comparative fault principles. There are, however, pre-*McIntyre* decisions which we believe resolve this issue.

In *Mathis v. Stacy*, 606 S.W.2d 290 (Tenn. Ct. App. 1980), the plaintiffs claimed they were injured by a vehicle being driven by Carroll Stacy ("Stacy") and owned by David Harris ("Harris"). Prior to trial, the plaintiffs settled their claims against Stacy and executed a release. A negligent entrustment claim against Harris proceeded to trial and each plaintiff was awarded a judgment for $25,000. *Mathis*, 606 S.W.2d at 291. Harris was uninsured, and on appeal the insurance company which insured the plaintiffs' automobile argued the release executed in favor of Stacy operated to release any claims against Harris because "Stacy's negligence was imputed to Harris on the theory of negligent entrustment." *Id*. This Court disagreed, stating:

> Tennessee has long recognized the tort of negligent entrustment of an automobile by the owner to an incompetent driver. *V. L. Nicholson Const. Co. v. Lane*, 177 Tenn. 440, 150 S.W.2d 1069 (1941). The owner's liability does not rest on imputed negligence but is based on his own negligence in entrusting his automobile to an incompetent driver. 60A C.J.S. *Motor Vehicles* § 431(1) (1969). The issue of the owner's negligence is therefore independent from the

-8-

issue of the driver's negligence. *Wishone v. Yellow Cab Co. No. 1*, 20 Tenn. App. 229, 97 S.W.2d 452 (1936, cert. den. 1936) and *Robinson v. Moore*, 512 S.W.2d 573 (Tenn. App. 1974, cert. den. 1974).

*Mathis*, 606 S.W.2d at 292. Applying the relevant portions of the Uniform Contribution Among Tort-Feasor's Act as it existed at that time, the *Mathis* Court held that the release in favor of Stacy did not operate to release Harris from an independent claim of negligence. *Id*.

The Tennessee Supreme Court's opinion in *Craven v. Lawson*, 534 S.W.2d 653 (Tenn. 1976) also is quite helpful. In *Craven*, the plaintiff sued the driver and the owner of an automobile for personal injuries sustained while riding as a passenger in the automobile. The plaintiff brought a derivative claim against the owner based on allegations that the driver was operating the automobile with the owner's consent and for his use and benefit. *Id*. at 654. Prior to trial, the plaintiff settled with the driver and executed a covenant not to sue. The owner moved for and was granted summary judgment on the ground that the covenant not to sue was a release which extinguished any vicarious liability on his part. Prior to entry of the order granting summary judgment, the plaintiff moved to amend his complaint to allege "negligent entrustment and other independent acts of negligence." *Id*. The trial court denied the motion to amend and dismissed the complaint. *Id*. On appeal, the Supreme Court concluded that the release did in fact operate to extinguish any liability of the owner for a derivative claim based on a master-servant or principal-agent relationship, but it would not extinguish an independent claim for negligence. The Supreme Court then held that the trial court had abused its discretion when it denied the plaintiff's motion to amend and when it thereafter dismissed the complaint. *Id* at 657.

We believe the *Mathis* and *Craven* decisions stand for two propositions: first, the tort of negligent entrustment involves an independent act of negligence on the part of the entrustor; and second, the entrustor is not vicariously liable for the conduct of the entrustee. These same conclusions were reached recently by the United States Court of Appeals for the Sixth Circuit in the unpublished opinion of *Darnell v. Fluor Daniel Corp*, No. 94-5757, 1995 U.S. App. LEXIS 35490 (6th Cir. Nov. 8, 1995) wherein that Court stated:

> The theory of negligent entrustment has long been recognized by the state of Tennessee. *V.L. Nicholson Constr. Co. v. Lane*, 177 Tenn. 440, 150 S.W.2d 1069 (Tenn. 1941). Under this theory, the owner's liability rests on his or her own negligence in entrusting the instrumentality causing harm to an incompetent person. *Mathis v. Stacy*, 606 S.W.2d 290, 292 (Tenn. App. 1980). The owner's negligence, then, is a separate and distinct issue from the operator's negligence. *Id.* at 292. Any liability imposed is direct, rather than vicarious. *Sakamoto v. N.A.B. Trucking Co., Inc.*, 717 F.2d 1000 (6th Cir. 1983).…

*Darnell*, 1995 U.S. App. LEXIS 35490, at *4.

Even though the *Mathis* and *Craven* decisions were decided prior to the adoption of comparative fault in *McIntyre*, *supra*, we see no reason why our Supreme Court's adoption of this particular comparative fault system affects whether or not a claim for negligent entrustment involves vicarious liability. We believe our holding that negligent entrustment does not result in vicarious liability of the entrustor for the conduct of the entrustee more closely links liability and fault than would the adoption of Plaintiff's position, and is, therefore, a result consistent with *McIntyre*. *See McIntyre*, 833 S.W.2d at 58.

Turning to the case at hand, we believe the Trial Court properly concluded prior to the trial that Scheve's potential liability for negligent entrustment should be determined under comparative fault principles. This issue was correctly submitted to and resolved by the jury. The Trial Court thereafter committed reversible error when it granted Plaintiff's Motion to Alter or Amend Judgment and held Scheve vicariously liable for Fisher's negligence. Accordingly, the Amended Judgment of the Trial Court is vacated and the original judgment which apportioned liability in accordance with the jury's verdict is hereby reinstated.[4]

The only remaining issue raised by Scheve which is not pretermitted by our resolution of the previous issue is Scheve's claim that the jury's award of $5,000 in punitive damages against him is not supported by the evidence. In Tennessee, punitive damages can be awarded only upon a finding that a defendant "acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Since punitive damages are awarded only in "the most egregious of cases," a plaintiff must prove entitlement to punitive damages by clear and convincing evidence. *Id.* In the present case, the jury was instructed on when it could award punitive damages and thereafter concluded Plaintiff was entitled to punitive damages from Scheve. After further testimony, the jury concluded Scheve should be required to pay $5,000 in punitive damages.

The jury's verdict on this issue can be set aside only if there is no material evidence to support it. Tenn. R. App. P. 13(d); *Forrester v. Stockstill*, 869 S.W.2d 328, 329 (Tenn. 1994). A verdict cannot, however, be based upon a "mere spark, glimmer, or scintilla of evidence." *See Sadek v. Nashville Recycling Co.*, 751 S.W.2d 428, 431 (Tenn. Ct. App. 1988). In reaching its conclusion, the jury obviously credited the testimony of Fisher over that of Scheve with regard to, among other things, their history of drinking alcohol and smoking marijuana together, as well as Scheve's claimed lack of knowledge about Fisher's use of these substances. We conclude there is substantial and material evidence to support the jury's award of punitive damages against Scheve,

---

[4] It is important to point out there may be situations where a defendant is liable for the independent tort of negligent entrustment and, at the same time, vicariously liable for another person's conduct if a proper agency type relationship has been shown to exist which would allow the imposition of vicarious liability. In the present case, Plaintiff does not contend such an agency type relationship exists. In fact, Plaintiff admits in her brief that "she was not relying on any agency or employment of Defendant Fisher by Defendant Scheve to obtain vicarious liability herein, but simply the doctrine of negligent entrustment."

and affirm the judgment of the Trial Court insofar as it awards punitive damages against Scheve in the amount of $5,000.

The only issue raised by Plaintiff on appeal is a challenge to the timeliness of Scheve's Motion for New Trial filed on November 22, 2002. Plaintiff claims this motion comes too late under Tenn. R. Civ. P. 59 since it was filed more than thirty days after entry of the original judgment on June 4, 2002. Scheve was not held vicariously liable for the full amount of the jury's verdict until the Trial Court granted Plaintiff's Motion to Alter or Amend Judgment on November 13, 2002. Scheve's Motion for New Trial was filed nine days later. If we were to accept Plaintiff's argument, Scheve would have been required to file his motion challenging the Trial Court's determination that he was vicariously liable for the entire verdict approximately four months before this ruling was made in the amended judgment. Tenn. R. Civ. P. 59 does not require counsel to see into the future, but instead only requires that "[a] motion for new trial and all other motions permitted under this rule shall be filed and served within thirty (30) days after judgment has been entered in accordance with Rule 58." Tenn. R. Civ P. 59.02. Scheve did this as his motion was filed well within thirty days after the amended judgment first finding him vicariously liable was entered. Plaintiff's argument on this issue is devoid of any merit.

### Conclusion

The Amended Judgment of the Trial Court is vacated. The original Judgment of the Trial Court entered on June 4, 2002, is reinstated. This case is remanded to the Trial Court for such further proceedings as are required, if any, consistent with this Opinion, and for collection of the costs below. Exercising our discretion, the costs on appeal are assessed equally against Appellant Thomas Scheve and his surety, and Appellee Jasmine A. Ali.

_____
D. MICHAEL SWINEY, JUDGE