FILED

AUG 19 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   13-56425 |
| Plaintiff–Appellee, | D.C. No. 2:06-cv-05014-PJW |
| v. | |
| 1,679 FIREARMS, 87,983 ROUNDS OF AMMUNITION; et al., | MEMORANDUM* |
| Defendants, | |
| MARIA FERRO, | |
| Claimant–Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   13-56707 |
| Plaintiff–Appellant, | D.C. No. 2:06-cv-05014-PJW |
| v. | |
| 1,679 FIREARMS, 87,983 ROUNDS OF AMMUNITION; et al., | |
| Defendants, | |
| MARIA FERRO, | |
| Claimant–Appellee. | |

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Central District of California
Patrick J. Walsh, Magistrate Judge, Presiding

Argued and Submitted June 8, 2016
Pasadena, California

Before: PREGERSON, HAWKINS, and BEA, Circuit Judges.

This civil *in rem* forfeiture case is before us for a second time. We previously remanded this case to the district court to conduct a new analysis under the Excessive Fines Clause of the Eighth Amendment. *See United States v. Ferro* (*Ferro I*), 681 F.3d 1105, 1114–17 (9th Cir. 2012).[1] The district court did so and concluded that claimant Maria Ferro ("Maria") was entitled to a 20% remission of the forfeiture of a firearm collection worth $2.55 million—that is, the district court ruled that an 80% forfeiture of the firearm collection, or $2.04 million, was not an unconstitutionally excessive fine. Maria appealed, and the government cross-appealed. We have jurisdiction under 28 U.S.C. § 1291, and we vacate and remand.

**I**

---

[1] We assume that the parties are familiar with this case and discuss the facts and litigation history only as necessary to resolve the issues currently before us on appeal. Our prior opinion discusses the background of this case in greater detail. *See generally Ferro I*, 681 F.3d at 1107–10.

Both Maria and the government contend that the district court erred in its excessiveness analysis in various ways. We agree with each party in part.

**1.** In our first opinion, we held that the district court's excessiveness analysis was flawed because it considered only the extent to which a forfeiture of the firearm collection would be unconstitutionally excessive given the conduct that subjected the firearms to forfeiture, to wit, Robert Ferro's ("Robert") felonious possession of the firearms. *Ferro I*, 681 F.3d at 1114–17. We noted that Maria, the owner of the firearm collection, was the one punished by the forfeiture and, accordingly, held that the excessiveness analysis must "center on Maria's culpability and the various factors mentioned in [*United States v. $100,348.00 in U.S. Currency* (*$100,348 in Currency*), 354 F.3d 1110, 1122 (9th Cir. 2004)]."[2] *Ferro I*, 681 F.3d at 1115–16. On remand, the district court applied the *$100,348 in Currency* factors to Robert and Maria separately and found: "Maria and Robert are equally responsible for the conduct giving rise to the forfeiture and, therefore, their culpability will be weighed equally, as will their equities." It found "no mitigating

_____

[2] These factors relate to the gravity of the offense giving rise to the forfeiture: "(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." *$100,348 in Currency*, 354 F.3d at 1122.

factors supporting a remission based on [Robert's] conduct" but found some mitigation proper as to Maria and ordered a 20% remission of the forfeiture.

The district court did not heed the guidance we set out in *Ferro I*. Although the district court did not articulate a relationship between Robert and Maria's ostensibly equal responsibility and what amounts to an 80% forfeiture of the firearm collection, it is clear that Robert's conduct and culpability continued to weigh heavily in the district court's excessiveness analysis. To reiterate what we said before, the focus of the excessiveness analysis must be on Maria's culpability for the conduct giving rise to the forfeiture, because the forfeiture will punish her, and only her. *Ferro I*, 681 F.3d at 1114–17.[3] Robert's conduct rendered the firearm collection forfeitable and exposed Maria to the possibility of a $2.55 million "fine." The purpose of the excessiveness inquiry is to ensure that the "fine" is not "grossly disproportional," *United States v. Bajakajian*, 524 U.S. 321, 334 (1998), to what Maria did, her mental state in acting or failing to act (whether she acted

---

[3] To the extent the government may be concerned that our decision on this point will encourage sham transfers of property to avoid forfeiture, we note only that the government has not argued to us that Robert's transmutation of his interest in the firearm collection to Maria was a sham or should otherwise be ignored for purposes of excessiveness review. As a result, Maria is undoubtedly the sole owner of the firearm collection, and the forfeiture punishes only her. Accordingly, the excessiveness analysis must focus on the extent to which a forfeiture of the firearm collection would be grossly disproportional to *her* culpability for the conduct giving rise to the forfeiture. *See Ferro I*, 681 F.3d at 1114–17.

negligently, recklessly, or intentionally), the consequences of her action or inaction, and other factors that evidence her culpability for the conduct that gave rise to the forfeiture. *Cf. $100,348 in Currency*, 354 F.3d at 1122; *United States v. Real Prop. Located in El Dorado Cty.* (*El Dorado*), 59 F.3d 974, 985–86 (9th Cir. 1995), *abrogated in part on other grounds by Bajakajian*, 524 U.S. 321, *as recognized by Ferro I*, 681 F.3d at 1115.[4]

For this reason, we caution the district court against considering the amount of the remission in percentage terms. The question is not Robert and Maria's relative responsibility for having caused Robert to gain possession of the firearms, but what level of remission is required to avoid a "fine" that is unconstitutionally excessive as to Maria given her culpability for the conduct that gave rise to the forfeiture. The value—not the percentage—of the property to be forfeited is of

---

[4] We do not mean to suggest that Robert's conduct could never be relevant to the excessiveness analysis. To the contrary, we can imagine circumstances in which his conduct could be probative of Maria's culpability. For example, *$100,348 in Currency*, 354 F.3d at 1122, calls for consideration of "the extent of the harm caused." If Robert had caused substantial harm with Maria's firearms, it could be permissible to consider that harm in analyzing whether a forfeiture of the firearms would be unconstitutionally excessive as to Maria. (Indeed, tort law generally recognizes a tort of negligent entrustment, which can make an owner of property liable for damages when another person harms a third party with the property. *See, e.g.*, *Todd v. Dow*, 23 Cal. Rptr. 2d 490, 494–95 (Ct. App. 1993).) However, these are not the facts of this case. There is no claim that Robert's possession of the firearms caused any harm to anyone.

primary importance; to state the obvious, all else being equal, an 80% forfeiture of property worth $2.55 million would be far more punitive than an 80% forfeiture of property worth $255,000.[5] Also, while it is tempting to consider the wealth of the individual to be fined in assessing the proper fine—because to be a deterrent, the fine must "sting"—that factor alone cannot be considered as determinative. A billionaire who drove his car imprudently, but caused no accident, should get a significant fine, but even were there no statutory limits, he should not be fined millions.

**2.** In *Ferro I*, we noted that, "[i]n assessing whether a fine is excessive, this court is 'not required to consider any rigid set of factors.'" *Ferro I*, 681 F.3d at 1115 (quoting *$100,348 in Currency*, 354 F.3d at 1121). We remonstrated the district court for "mechanistically appl[ying] four factors stated by this court in *$100,348 in Currency*" to determine "whether the forfeiture '[was] grossly disproportional to the gravity of Robert Ferro's offenses.'" *Id.*; *see supra* note 2 (listing factors). The government contends that, on remand, the district court repeated this mistake and "mechanistically applied" the same factors to Robert and

---

[5] The district court valued the firearm collection based on an appraisal of the collection's market value. We note that the subjective value of forfeitable property to the property's owner can also be a factor in an excessiveness analysis. *See El Dorado*, 59 F.3d at 985; *see also von Hofe v. United States*, 492 F.3d 175, 188 (2d Cir. 2007).

Maria rather than to Robert alone. In particular, the government argues that the district court should have considered the factors from *El Dorado*, 59 F.3d at 986, for evaluating the "culpability of the owner."[6]

We agree that the district court again hewed closely to the factors in *$100,348 in Currency* and, on remand, it should consider all factors relevant to Maria's culpability for the conduct that gave rise to the forfeiture. *See Ferro I*, 681 F.3d at 1115. However, it should also consider any factors relevant to the other side of the excessiveness inquiry: the "harshness of the forfeiture." *See El Dorado*, 59 F.3d at 985–96; *supra* note 6 (listing factors); *cf. von Hofe*, 492 F.3d at 188 (giving extra scrutiny to a forfeiture of the family home).[7] Our agreement with the

---

[6] *El Dorado*, 59 F.3d at 985, provided a nonexhaustive list of factors to consider in evaluating the "harshness of the forfeiture": "(1) the fair market value of the property; (2) the intangible, subjective value of the property, e.g., whether it is the family home; and (3) the hardship to the defendant, including the effect of the forfeiture on defendant's family or financial condition." The case also provided a nonexhaustive list of factors to consider in evaluating the "culpability of the owner": "(1) whether the owner was negligent or reckless in allowing the illegal use of his property; or (2) whether the owner was directly involved in the illegal activity, and to what extent; and (3) the harm caused by the illegal activity, including (a) (in the drug trafficking context) the amount of drugs and their value, (b) the duration of the illegal activity, and (c) the effect on the community." *Id.* at 986.

[7] Here, the analog from *von Hofe* would be what part of Maria's net worth was represented by the firearm collection, and what were her economic prospects for the future.

government on this point should not be construed as agreement with its interpretation and application of the "culpability of the owner" factors from *El Dorado*. We leave it to the district court, in the first instance, to consider the parties' arguments regarding these factors.

**3.** In its application of the third factor from *$100,348 in Currency*, 354 F.3d at 1122—"the other penalties that may be imposed for the violation"—the district court erred. The district court determined that Maria had faced the potential of criminal liability—including a statutory maximum fine of $250,000, a Sentencing Guidelines fine of $75,000, and a significant prison sentence—for aiding or abetting Robert's felon-in-possession-of-firearm crime.[8] However, the district court never suggested that Maria had the "specific intent to facilitate" Robert's crime or assist or participate in the crime required to give rise to aider-or-abettor liability. *See United States v. Shorty*, 741 F.3d 961, 970 (9th Cir. 2013); *see also United States v. Canon*, 993 F.3d 1439, 1442 (9th Cir. 1993); *cf. von Hofe*, 492 F.3d at 190. Moreover, in examining the available penalties, the district court

_____

[8] At oral argument, Maria argued that only the monetary penalty, and not the term of imprisonment, is relevant. We disagree. In evaluating excessiveness, we have consistently considered the full range of penalties available for the conduct, and not just the monetary penalties. *See, e.g.*, *United States v. Mackby*, 339 F.3d 1013, 1017–18 (9th Cir. 2003); *United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1197–98 (9th Cir. 1999).

found probative that "the law provides for the forfeiture of the weapons." The firearm collection has already been found forfeitable; it would be circular reasoning to consider the forfeitability of the firearms in determining whether the forfeiture must be remitted to avoid a violation of the Excessive Fines Clause.

We also question the utility of the "other penalties" factor for present purposes. Although we often look at the available penalties, we generally do so where the person being punished is the person whose conduct gave rise to the forfeiture. *See, e.g.*, *United States v. Beecroft*, __ F.3d __, 2016 WL 32403404, at *7–*8 (9th Cir. June 13, 2016). As the Second Circuit noted in *von Hofe*, 492 F.3d at 189–91, the case most comparable to this case, the "other penalties" factor is more difficult to apply and carries less force when the person being punished by the forfeiture is not the person who committed the illegal acts that gave rise to the forfeiture.[9]

---

[9] Consideration of this factor as to Robert may nonetheless supply a useful benchmark. For his illegal possession of the firearms, Robert received 65 months' imprisonment and a $75,000 fine. Maria presumably bore no more culpability for Robert's illegal possession than he did—she was not the illegal possessor, was not criminally charged, and did not know that Robert's possession of the firearms was illegal, whereas he did. The district court could consider the punishment that Robert received for the conduct that gave rise to the forfeiture in determining the extent to which a forfeiture of Maria's firearms would be "grossly disproportional" to Maria's culpability for her part in Robert's possession of the firearm collection.

**4.** The government argues that the district court's statement that Maria had "acted with willful blindness" should preclude any finding of excessiveness. We disagree. For criminal-law purposes, "willful blindness" of a fact is treated as equivalent to knowledge of that fact. *See, e.g.*, *United States v. Mapelli*, 971 F.2d 284, 285–86 (9th Cir. 1992). Here, Maria had actual knowledge of all of the facts that gave rise to the forfeiture—Robert's possession of the firearms and his status as a felon, *see Ferro I*, 681 F.3d at 1113—and thus there was no reason to invoke "willful blindness" as a legal concept.[10] What Maria apparently lacked was an

---

[10] The district court's use of the term "willful blindness" seems to have been shorthand for what it discussed elsewhere in its decision: that Maria had generally turned a "blind eye" to Robert's possession of the firearms, had taken no interest in the firearms, had allowed Robert unfettered possession of them, and had not investigated the legality of his possession.

appreciation of the legal consequences of those facts—that is, that Robert could not legally possess the firearms account his status as a felon.[11]

The cases cited by the government hold that an owner of property cannot claim an "innocent owner" defense to forfeiture by being "willfully blind" to the facts that gave rise to the forfeiture; they do not suggest that "willful blindness"—or, for that matter, knowledge—negates the possibility that the forfeiture may nonetheless be unconstitutionally excessive. *See, e.g.*, *United States v. Collado*, 348 F.3d 323, 327–28 (2d Cir. 2003). We have already found that

---

[11] More precisely, Maria failed to recognize that Robert's change in status from non-felon to felon meant that he could no longer possess the firearms. Robert legally purchased the firearms and could have possessed them legally until he was convicted of a felony. As we have noted, Robert transmuted his interest in the firearm collection to Maria before his state felony conviction was entered. Maria acknowledges that she was negligent in failing to appreciate the significance of Robert's felon status and in taking no action to dispossess Robert of the firearms.

The district court recognized that Maria, like most people, did not understand the federal felon-in-possession law. Indeed, what separates this case from many forfeiture cases, such as those involving drug-related crime, is that the conduct giving rise to the forfeiture—possession of firearms—is not inherently illegal. *See Staples v. United States*, 511 U.S. 600, 611 (1994) ("Even dangerous items can . . . be so commonplace and generally available that we would not consider them to alert individuals to the likelihood of strict regulation. . . . [D]espite their potential for harm, guns generally can be owned in perfect innocence."). That is, the firearms are not forfeitable because they were possessed but because Congress has made it illegal for felons, like Robert, to possess them. The district court may factor the reasonableness of Maria's failure to understand this distinction into its assessment of Maria's culpability for the conduct that gave rise to the forfeiture.

Maria was not entitled to an "innocent owner" defense, *see Ferro I*, 681 F.3d at 1113, and so the question remains to what extent a forfeiture of the firearm collection would be "grossly disproportional" to Maria's culpability for the conduct that gave rise to the forfeiture of firearms in this case: Robert's possession of the firearms after he had completed serving his earlier state prison sentence.

## II

We briefly address two remaining issues raised by the parties.

**1.** After we remanded this case to the district court, the government discovered that, in 1998, Maria pleaded guilty to, and was convicted of, two state misdemeanors.[12] The government asked the district court to consider these convictions as evidence of Maria's culpability because, under Cal. Penal Code § 12021(c)(1) (1998), Maria was herself prohibited from owning or possessing firearms for ten years due to one of these convictions. The district court stated that it "wasn't really going to consider [the convictions], and that [the convictions were not] going to change [the court's] decision." The government argues that the district court abused its discretion when it refused to consider the convictions.

---

[12] Maria was convicted of misdemeanor violations of Cal. Penal Code § 148(a) (resisting, delaying, or obstructing an officer) and Cal. Penal Code § 243(b) (battery of an officer), for which she received 36 months' probation. In 2002, the convictions were dismissed under Cal. Penal Code § 1203.4.

We disagree. The district court was not asked to judge Maria's culpability generally. Rather, it correctly limited its inquiry to Maria's culpability with respect to the conduct that gave rise to the forfeiture at issue, framing the question it had to answer thus: "What is Maria's culpability in her husband's possession of the firearms?" Maria's own ownership and possession of the firearms—which was ostensibly illegal under state law, not federal law, and which did not give rise to this federal forfeiture action—is irrelevant to answering that question. And, of course, excluding irrelevant evidence is altogether proper, not an abuse of discretion. *See* Fed. R. Evid. 402.

**2.** In its decision on remand, the district court discussed certain inconsistencies in Maria's submissions and testimony over the course of this lengthy litigation. Maria argues that her "testimony throughout this forfeiture proceeding has been remarkably consistent" given the circumstances of this case, and that the district court clearly erred in finding otherwise. However, the district court made no finding that Maria was not credible, and the facts on which it based its decision align with Maria's own testimony. The district court did not clearly err. *See United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc) (the clear-error standard requires upholding a factual determination unless it is illogical, implausible, or without support in inferences that may be drawn from the record).

13

## III

We commend the district court for its conscientious attempts at resolving this very difficult case. Nonetheless, we conclude that a third try is necessary because of errors in the district court's excessiveness analysis. Accordingly, we vacate the district court's order on remission and remand for further proceedings consistent with this disposition. Each party shall bear its own costs on appeal.

**VACATED AND REMANDED.**